**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 2, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

LARRY E. BEEDLE;
PEGGY LEE KORN,

      Plaintiffs-Appellants,

v.

WILLIAM WILSON; JIMMY KING;
PHILIP BOHANON; ANGELA
TOVAR; TRISHA HASTY;
JACKSON COUNTY MEMORIAL
HOSPITAL; ELAINE BROWN;
FENTON, FENTON, SMITH,
RENEAU AND MOON; BEVERLY
PEARSON; JAY CHAPMAN;
TAYLOR WYAND; RICHARD B.
DARBY; JOHN WAMPLER; MIKE
PATTERSON,

      Defendants-Appellees.

No. 01-6322

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. Nos. 99-CV-827-M and 00-CV-699-M)**

---

**Submitted on the briefs**:

Larry Beedle, Plaintiff-Appellant, Pro Se.

Peggy Korn, Plaintiff-Appellant, Pro Se.

Reggie N. Whiten, Robert W. Nelson, Simone Gosnell Fulmer, of Whitten,

Nelson, McGuire, Wood, Terry, Roselius & Dittrich, Oklahoma City, Oklahoma, for Defendants-Appellees Jackson County Memorial Hospital, William Wilson, Jimmy King, and Angela Tovar.

Amy L. Alden, of Hudson & Alden, Oklahoma City, Oklahoma, for Defendants-Appellees Fenton, Fenton, Smith, Reneau & Moon, Beverly Pearson, Jay Chapman and Taylor Wyand.

Beverly S. Pearson, of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, for Defendants-Appellees Jackson County Memorial Hospital, Trisha Hasty, and Elaine Brown.

Linda Soper, Office of the Attorney General, Oklahoma City, Oklahoma, for Defendants-Appellees Richard B. Darby and John Wampler.

Gary Underwood and Darren R. Cook, of Helms & Underwood, Oklahoma City, Oklahoma, for Defendant-Appellee Philip L. Bohanon.

Michael R. Chaffin and John L. Blodgett, of Fleming, Frailey, Chaffin, Cordell, Greenwood & Perryman LLP, Chickasaw, Oklahoma, for Defendant-Appellee Mike Patterson.

---

Before **SEYMOUR**, **BRISCOE** and **TYMKOVICH**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Larry E. Beedle and Peggy Lee Korn, proceeding *pro se*, filed suit pursuant to 42 U.S.C. § 1983 against Jackson County Memorial Hospital (Hospital), several of the Hospital's employees, an Oklahoma state court judge, a law firm and several of the lawyers employed there, an Oklahoma state district attorney, a local police chief, a private citizen, and the plaintiffs' former attorney. Plaintiffs' amended complaints alleged that several defendants violated Mr. Beedle's rights under the First Amendment of the U.S. Constitution by participating in the malicious and wrongful filing of a state-court lawsuit against him for libel. Ms. Korn claimed the Hospital and various Hospital employees violated her rights by committing sexual battery against her, or permitting commission of the same, while she was in the Hospital's care as an inpatient. Mr. Beedle and Ms. Korn also alleged that various defendants conspired to deprive them of their constitutional rights. In addition, they raised a number of state law claims.

In five separate orders, the district court dismissed with prejudice each of plaintiffs' federal claims for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6). The court also dismissed without prejudice plaintiffs' state law claims, a ruling Mr. Beedle and Ms. Korn do not challenge on appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, affirm in part, reverse in part, and remand.

# I

We review *de novo* an order dismissing a complaint for failure to state a claim for relief under Rule 12(b)(6), using the same standard applied by the district court. *See Ordinance 59 Ass'n v. United States Dep't of Interior Sec'y*, 163 F.3d 1150, 1152 (10th Cir. 1998). "We accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party." *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998). Dismissal of a complaint pursuant to Rule 12(b)(6) will be upheld only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Ruiz v. McConnell*, 299 F.3d 1173, 1181 (10th Cir. 2002). Because Mr. Beedle and Ms. Korn are proceeding *pro se*, we review their pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) ("We hold [*pro se* pleadings] to less stringent standards than formal pleadings drafted by lawyers."). Under these principles, the plaintiffs alleged the following basic facts.

While hospitalized, Ms. Korn, who is blind, was allegedly a victim of several incidents of sexual battery committed by Trisha Hasty, a nurse's aid

-4-

employed at the Hospital. As a result, Mr. Beedle and Ms. Korn wrote two letters inquiring whether anyone else had experienced anything similar while at the Hospital, and mailed the letters to numerous local residents. Based on the letters, the Hospital sued Mr. Beedle in Oklahoma state court for libel. The case was ultimately dismissed with prejudice after the Oklahoma Supreme Court held that the Hospital was "a political subdivision of the State . . . and . . . therefore barred from bringing an action for libel." *Beedle v. Darby*, 996 P.2d 934, 934 (Okla. 2000) (citations omitted). Mr. Beedle and Ms. Korn subsequently filed the underlying federal suit alleging their federal and state rights had been violated. Additional facts relevant to our analysis will be discussed in the course of this opinion.

On appeal, Mr. Beedle and Ms. Korn challenge the dismissal of their federal claims. They also purport to appeal the district court's denial of their recusal motion but they have not presented any argument on appeal in support of this claim. We therefore deem it waived. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995).[1]

---

[1]In parsing through the plaintiffs' filings before the district court and our court on appeal, it appears Ms. Korn and Mr. Beedle collectively assert that their First Amendment rights were violated by the Hospital's malicious libel action against Mr. Beedle and the alleged conspiratorial acts taken by the other defendants to further the same. We note, however, that Ms. Korn lacks standing as to her alleged First Amendment and associated claims. She was not named by

(continued...)

## II

*A.    First Amendment claim against the Hospital, and William Wilson and Jimmy King, in their official capacities*

Mr. Beedle contends the Hospital violated his constitutional rights by filing the malicious and wrongful state-court libel lawsuit against him, maintaining that the libel suit was designed and intended to punish him for his speech and to chill future speech.  He alleges the Hospital knew or should have known that, as a political subdivision, it was precluded from filing a malicious libel claim against a private citizen.  He asserts the Hospital acted through its policy makers, Mr. Wilson and Mr. King, and therefore Mr. Wilson and Mr. King are liable in their official capacities.[2]  He also brings claims against Mr. Wilson and Mr. King in their individual capacities, which we address separately below.  The district court dismissed Mr. Beedle's claims, reasoning in part that Mr. Beedle failed "to point to any custom or policy of defendants . . ." that would render them liable under §

---

[1](...continued)
the Hospital as a defendant in the underlying libel action and therefore cannot point to any injury-in-fact as a result of the Hospital's suit against Mr. Beedle. *See Loving v. Boren*, 133 F.3d 771, 772-73 (10th Cir. 1998) (plaintiff required to show injury-in-fact in order to have standing in First Amendment context). Accordingly, the only claims we will address in regard to Ms. Korn are her sexual assault claim against the Hospital and two of its employees and her challenge to the state judge's denial of her motion to intervene in the libel suit.  We will discuss all other claims only in terms of Mr. Beedle.

[2]Mr. King served as the Executive Vice-President and Chief Operating Officer of the Hospital.  Mr. Wilson served as the Hospital's Chief Executive Officer.

-6-

1983. Rec., vol. IV, doc. 154 at 4. The court also determined that when the Hospital brought its state libel action against Mr. Beedle, it possessed a good-faith basis for believing it was not a governmental entity and that "the law and facts supported its claim." *Id.* at 5.

In order to survive a Rule 12(b)(6) motion to dismiss a § 1983 claim, a plaintiff must allege "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia." *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002) (quotation omitted). Here we must determine whether Mr. Beedle sufficiently alleged the Hospital was a governmental entity and, pursuant to the official actions taken by Mr. Wilson and Mr. King, proximately caused Mr. Beedle to suffer a constitutional harm. As we discuss in depth below, Mr. Beedle's allegations are sufficient to meet the pleading standard articulated in *Summum*.

*1. Hospital as governmental entity*

First, we conclude the Hospital was a governmental entity for § 1983 purposes. "The ultimate issue in determining whether a person is subject to suit under § 1983 is whether the alleged infringement of federal rights is 'fairly attributable to the state.'" *Tarabishi v. McAlester Reg'l Hosp.*, 827 F.2d 648, 651

(10th Cir. 1987) (*Tarabishi I*). The Hospital was created as a public trust pursuant to OKLA. STAT. ANN. tit. 60, § 176 *et seq.*, and OKLA. STAT. ANN. tit. 19, § 781 *et seq.* On at least three different occasions, our court has noted that under Oklahoma law public trust and county hospitals, or the private entities who contract with such hospitals to provide day-to-day services, are state actors for § 1983 purposes. *See Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir. 1991); *Milo v. Cushing Mun. Hosp.*, 861 F.2d 1194, 1196-97 (10th Cir. 1988); *Tarabishi I*, 827 F.2d at 652. Moreover, as detailed in the Oklahoma Governmental Tort Claims Act (GTCA), municipal and county hospitals created as public trusts are deemed political subdivisions. *See* OKLA. STAT. ANN. tit. 51, § 152(8)(d). The GTCA specifically directs that a political subdivision includes

> a public trust where the sole beneficiary or beneficiaries are a city, town, school, school district or county. For purposes of The Governmental Tort Claims Act, a public trust shall include a municipal hospital created pursuant to Section 30-101 *et seq.* of Title 11 of the Oklahoma Statutes, a county hospital created pursuant to Section 781 *et seq.* of Title 19 of the Oklahoma Statutes, or is created pursuant to a joint agreement between such governing authorities, that is operated for the public benefit by a public trust created pursuant to section 176 *et seq.* of Title 60 of the Oklahoma Statutes and managed by a governing board appointed or elected by the municipality, county, or both, who exercises control of the hospital, subject to the approval of the governing body of the municipality, county, or both.

*Id.* When a hospital satisfies this definition, it is deemed a political subdivision and, as a result, is not liable for harm arising from a variety of situations listed in the GTCA. *See* OKLA. STAT. ANN. tit. 51, § 155. As noted above, the Hospital

falls within this definition and even invoked its status as a political subdivision to challenge Mr. Beedle's cross-petition for slander and emotional distress in the state libel suit.

Indeed, in *Beedle*, the Oklahoma Supreme Court held that a public trust hospital, and in particular the Hospital here, was "a political subdivision of the State . . . and . . . therefore barred from bringing an action for libel." 996 P.2d at 934 (quotation omitted). The Hospital has not challenged this ruling in any manner. While limited in its analysis, the *Beedle* decision highlights that by virtue of being designated a political subdivision, the Hospital stands on equal footing with a municipality, school district, and other similar governmental units. *See* OKLA. STAT. ANN. tit. 51, § 152(8)(a)-(d). Just as action taken by such entities constitutes state action under § 1983, so too does such action taken by public trust hospitals. The Hospital is, therefore, a governmental entity subject to liability under § 1983.

*2. First Amendment forbids government malicious libel action*

Given the Hospital's status as a political subdivision, we must examine whether the Hospital's decision to bring the libel action against Mr. Beedle violated his First Amendment rights. We have held that "government action which chills constitutionally protected speech or expression contravenes the First Amendment." *Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996) (citing *Riley*

*v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 794 (1988), and *Gehl Group v. Koby*, 63 F.3d 1528, 1534 (10th Cir. 1995), *implicitly overruled on other grounds by Currier v. Doran*, 242 F.3d 905, 916 (10th Cir. 2001)).  In *Wolford*, we examined whether a plaintiff's constitutional rights were violated by the government's prosecution of her, where she alleged the government's action was motivated in part to retaliate against her for exercising her First Amendment rights.  *Id.*  We commented that "[i]n the context of a government prosecution, the decision to prosecute which is motivated by a desire to discourage protected speech or expression violates the First Amendment and is actionable under § 1983."  *Id.*  We reasoned that a central question to be addressed in such an action was "whether retaliation for the exercise of First Amendment rights was the 'cause' of the prosecution and the accompanying injuries to plaintiff."  *Id.* (citing *Rakovich v. Wade*, 850 F.2d 1180, 1189 (7th Cir. 1988)).  Likewise, in *Gehl Group*, a controversy we characterized as a vindictive prosecution case brought in retaliation against the plaintiffs' exercise of their First Amendment rights, 63 F.3d at 1534, we noted that "the ultimate inquiry is whether as a practical matter there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for the hostility or punitive animus towards the defendant because he exercised his specific legal rights."  *Id.* at n.6.  These cases make clear that a governmental lawsuit brought with the intent to retaliate against a citizen

for the exercise of his First Amendment rights is itself a violation of the First Amendment and provides grounds for a § 1983 suit.

Moreover, Supreme Court authority suggests that governmental entities are not permitted to bring libel actions against private citizens, at least without alleging actual malice, and that allowing them to do so would be contrary to the protections afforded to the citizenry by the First Amendment.[3] In *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964), the Court noted that "[f]or good reason, no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence." *Id.* at 291 (internal quotations omitted). Likewise, in *Rosenblatt v. Baer*, 383 U.S. 75 (1966), the Court stated "the Constitution does not tolerate in any form" "the spectre of prosecutions for libel on government." *Id.* at 81; *see also N.Y. Times Co. v. United States*, 403 U.S. 713, 724 (1971) (Douglas, J., with whom Black, J., joined, concurring) ("It is common knowledge that the First Amendment was adopted against the widespread use of the common law of seditious libel to punish the dissemination of material that is embarrassing to the powers-that-be."); *N.Y. Times Co.*, 376 U.S. at 295 (Black, J., with whom Douglas, J., joined, concurring) ("[A] State has no more power than the Federal Government to use a civil libel

---

[3]It is worth noting that the Hospital never argued, either in the proceedings below or before us on appeal, that a public entity is entitled to bring a libel action – maliciously or otherwise – against a private citizen.

law or any other law to impose damages for merely discussing public affairs and criticizing public officials."). In fact, the Oklahoma Supreme Court's decision in *Beedle*, although without much explanation, encapsulates the themes articulated by the Supreme Court, as well as the law from our circuit, by holding that the Hospital, as a political subdivision, was barred from suing Mr. Beedle for libel. 996 P.2d at 934.

Mr. Beedle's amended complaint alleges that the Hospital's libel suit was maliciously brought to retaliate against him for his speech. His complaint asserts that the Hospital initiated the original state law libel action with knowledge that his statements against the Hospital were not made with malice and with the purpose and effect of chilling his speech and violating his First Amendment rights. *See* Supp. App. at 21 (CJ-99-56, Petition of Jackson County Memorial Hospital, filed February 22, 1999, alleging defamation suit against Mr. Beedle); *id*. at 3 (complaint alleging that Jackson County Memorial Hospital *et al*. "conspired to commit an illegal and tortious act, the filing and maintaining of a barred and illegal defamation lawsuit, knowingly, maliciously, and wrongfully; with evidence that didn't contain 'actual malice," which violated Plaintiffs' First Amendment free speech rights, and also violated the liberty clause of the Fourteenth Amendment."). We conclude, therefore, that Mr. Beedle has sufficiently pled, for the purposes of surviving a 12(b)(6) motion, that the

-12-

Hospital, as a governmental entity, violated his First Amendment rights by filing the malicious libel action against him.[4]

### 3. Official policy

Because the Hospital here is akin to a municipality, we must determine whether the Hospital's decision to sue Mr. Beedle for libel constituted an official policy or custom. A municipality can only be liable under § 1983 if it took "action pursuant to official municipal policy of some nature [that] caused a

---

[4]Mr. Beedle's claim could also be analyzed, for § 1983 purposes, under the common law tort of malicious prosecution. *See Heck v. Humphrey*, 512 U.S. 477 (1994) (supporting availability of § 1983 cause of action for claims analogous to malicious prosecution); *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004) (same, listing Tenth Circuit cases); *Gehl Group v. Koby*, 63 F.3d 1528, 1534 (10th Cir. 1995) (framing § 1983 claim for First Amendment rights violation under the tort of vindictive prosecution), *implicitly overruled on other grounds by Currier v. Doran*, 242 F.3d 905, 916 (10th Cir. 2001). In order to survive an ordinary motion to dismiss an action for malicious prosecution under Oklahoma law, the burden rests on the plaintiff to allege (1) that the defendant maliciously instituted the action; (2) without probable cause; (3) which the plaintiff successfully defended; and (4) with resulting damage to the plaintiff. *Callaway v. Parkwood Village, L.L.C.*, 1 P.3d 1003, 1005 n.1 (Okla. 2000). A review of Mr. Beedle's complaint indicates he easily satisfies these elements. He alleges the Hospital's action against him was done with malice, and notes that the Hospital's actions have resulted in "an intentional infliction of emotional and mental stress causing physical illness." Supp. App. at 15. Likewise, the Hospital's suit against Mr. Beedle was terminated summarily and with prejudice in Mr. Beedle's favor by the Oklahoma Supreme Court. *See Beedle v. Darby*, 996 P.2d 934, 934 (Okla. 2000). Finally, as discussed above, our case law makes clear the government cannot lawfully initiate an action against a citizen in retaliation for the exercise of his First Amendment rights. Mr. Beedle's allegations that the Hospital maliciously filed its libel action against him, without any evidence of actual malice on his part, satisfies the pleading requirement that the Hospital's action against him lacked probable cause.

-13-

constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), the Supreme Court further developed the rule expressed in *Monell*, stating "[t]he 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* at 479. The Court recognized, however, that "municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances." *Id.* at 480. But the Court emphasized that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481. Nonetheless "[i]f the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Id.*

In providing further contours to the rules regarding municipal liability, the Supreme Court has noted that "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). In this context, "when an official municipal policy itself violates federal law, issues of culpability

and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

Based on our review of the complaint, Mr. Beedle has made a colorable claim that Mr. Wilson and Mr. King were official policy makers for the Hospital and that they made the final decision to file the state libel case against him. The complaint identified Mr. Wilson as the CEO of the Hospital and Mr. King as its COO, positions which indicate they have final decision-making authority for the Hospital. Rec., vol. II, doc. 83 at 2. The complaint also averred that Mr. Wilson and Mr. King, as the Hospital's executives, filed the state libel action against Mr. Beedle. *Id.* at 14. Defendants do not contend otherwise. Any decision made by Mr. Wilson and Mr. King on behalf of the Hospital to sue Mr. Beedle would have been the "'moving force' behind" the claimed violation of Mr. Beedle's First Amendment rights. *Bd. of County Comm'rs*, 529 U.S. at 404; *Barney*, 143 F.3d at 1307. We conclude, therefore, that Mr. Beedle's complaint is sufficient to state a claim against the Hospital and its policy makers for the infringement of his First Amendment rights. *See, e.g., Wilson v. Civil Town of Clayton*, 839 F.2d 375, 382 (7th Cir. 1988) (allegations in *pro se* complaint that town trustees conspired to have plaintiff's landlord evict him from his business property were sufficient to allege official policy and impose § 1983 liability on town); *Lott v. Andrews Ctr.*,

259 F. Supp. 2d 564, 574 (E.D. Tex. 2003) (complaint sufficiently alleged that decision by community health center CEO to terminate employee for failure to drop criminal charges against co-worker was official policy made by final decisionmaker); *Palmer v. City of Monticello*, 731 F. Supp. 1503, 1509 (D. Utah 1990) (single decision to discharge police officer "may fall within the rubric of official policy," thereby barring a motion to dismiss).

### 4. *Good faith defense unavailing*

The Hospital nonetheless contends it is not liable because at the time it filed its state suit and opposed Mr. Beedle's various motions to dismiss, the Hospital had a good-faith basis for believing it was not a governmental entity for § 1983 purposes and thus was not precluded from bringing a libel action.[5] This contention approximates a qualified immunity defense in that the Hospital claims a reasonable official would not have known its actions violated a clearly established federal right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Such an argument is misplaced because a governmental entity may not assert qualified immunity from a suit for damages. *Owen v. City of Independence*, 445

---

[5]As previously noted, *see* note 3 *supra*, the Hospital never contends that it had a good-faith basis for believing it was entitled to bring either a libel or a malicious libel action against Mr. Beedle even if it were a public entity. The Hospital simply maintains it was not clearly established that county hospitals were governmental entities for all purposes and it proceeded in its suit with a good faith belief in the merits of that position.

-16-

U.S. 622, 654, 657 (1980); *Cannon v. City & County of Denver*, 998 F.2d 867, 877 n.9 (10th Cir. 1993). A qualified immunity defense is only available to parties sued in their individual capacity. *Moore v. City of Wynnewood*, 57 F.3d 924, 929 n.4 (10th Cir. 1995). Therefore, the Hospital's good faith argument cannot prevail.

Mr. Beedle's allegations against the Hospital and Mr. Wilson and Mr. King in their official capacities were thus sufficient to withstand a Rule 12(b)(6) motion to dismiss his First Amendment claim. In reversing the district court's ruling on this issue, however, we express no opinion on whether Mr. Beedle can prevail on this § 1983 claim. We hold only that it should not have been dismissed pursuant to Rule 12(b)(6) and remand this portion of Mr. Beedle's action to the district court for further proceedings.

B.      *First Amendment claim against Mr. Wilson and Mr. King, in their individual capacities*

Mr. Beedle also sued Mr. Wilson and Mr. King in their individual capacities for the alleged injury caused to him by the Hospital's malicious libel suit. In dismissing these claims, the district court held that Mr. Wilson and Mr. King were entitled to qualified immunity. We disagree.

When faced with a qualified immunity defense, the plaintiff must establish "(1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the

defendant's actions." *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999).

Our discussion in the previous section indicates the first prong of the qualified immunity analysis has been satisfied by Mr. Beedle's allegations that the Hospital, through the actions of Mr. Wilson and Mr. King, violated Mr. Beedle's First Amendment rights by bringing the malicious libel action against him. Similarly, at the time Mr. Wilson and Mr. King brought the Hospital's libel action against Mr. Beedle, there was ample law clearly establishing the Hospital was a governmental entity barred from filing such a suit.

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The challenged action need not have been previously declared unlawful, but its unlawfulness must be evident in light of pre-existing law. *Greene*, 174 F.3d at 1142. "This is generally accomplished when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law." *Id.*

In concluding defendants in this case were entitled to qualified immunity, the district court noted in part that "it was not clearly established at the time [the Hospital] filed its claim for libel against [Mr.] Beedle that [the Hospital] was a governmental entity that was not entitled to bring a claim for libel." Rec., vol.

-18-

IV, doc. 154 at 4. The court went on to state that "[a]t the time the [libel] lawsuit was filed, there was no Oklahoma decision determining that county hospitals defined as public trusts under the Governmental Tort Claims Act, would be considered a governmental entity for all purposes." *Id.* The court's statement, and the Hospital's arguments supporting the same, miss the point.

At the time the Hospital filed its libel action, the law was clear in our circuit that a public trust hospital in Oklahoma was a governmental actor pursuant to § 1983 regardless of its designation as a political subdivision under the GTCA. Thus, in *Tarabishi I*, 827 F.2d at 651-52, we held that a public trust hospital created pursuant to OKLA. STAT. ANN. tit. 60, § 176 *et seq.*, was an agency of the state, and therefore could be sued under § 1983. Our ruling was not predicated on or influenced by the hospital's status under the GTCA. In fact, at the time relevant to our decision in *Tarabishi I*, public trust hospitals were excluded from the GTCA. *See Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1566 (10th Cir. 1991) (*Tarabishi II*). Subsequent cases from our court have held, with relative little fanfare, that public trust and county hospitals are properly deemed state actors for § 1983 purposes. *See Carnes*, 922 F.2d at 1509; *Milo*, 861 F.2d at 1196-97. All of these cases were decided before the conduct at issue here. We are therefore not convinced the lack of state case law stating that political subdivisions under the GTCA would be treated as governmental entities in all

-19-

instances bears much import. Tenth Circuit case law had already established that public trust hospitals, regardless of their GTCA status, can be liable as state actors under § 1983.

Nor are we persuaded that our ruling in *Tarabishi II* gives rise to the implication that there may be instances where a political subdivision under the GTCA might not always be treated as a state actor under § 1983, as the Hospital advocates and the district court concluded. In *Tarabishi II*, 951 F.2d at 1563, we examined in part whether the same defendant hospital we deemed a state actor for § 1983 purposes in *Tarabishi I* could claim immunity as a "special function governmental unit" under Oklahoma's Local Government Antitrust Act (LGAA). We rejected the hospital's claim for immunity, noting that the LGAA did not include within its rubric public trust hospitals. *Id.* at 1564. We also noted that, at the time relevant to the case, the GTCA explicitly excluded public trust hospitals from protections afforded to political subdivisions. *Id.* at 1567. We therefore concluded the defendants could not claim immunity as a "special function governmental unit" under the LGAA. *Id.* So doing, we rejected the hospital's argument that because we had deemed the hospital a state actor in *Tarabishi I*, it should be entitled to immunity under the LGAA. Instead, we determined our decision in *Tarabishi I* was not "dispositive of whether . . . the Hospital . . . [was] entitled to immunity as . . . a special function governmental unit." *Id.* at 1565

n.6.

Relying on our rulings from the *Tarabishi* cases, the Hospital contends it had reason to believe that even if it was considered a political subdivision under the GTCA, it might not always be deemed a governmental entity for all purposes. *Tarabishi I* and *II* do not support this contention. Rather, these cases instruct that even though a public trust hospital may not be designated as a political subdivision under a specific state statute, the lack of such status does not bar the hospital's designation as a state actor under § 1983.

In sum, we do not agree with the district court's ruling that at the time the Hospital brought its suit for libel against Mr. Beedle, it was not clearly established that the Hospital was a governmental entity. Our cases had made clear that a public trust hospital in Oklahoma is deemed a governmental entity for § 1983 purposes. Similarly, as discussed in the previous section, ample authority had made clear that the filing of a malicious libel action by a governmental entity against a citizen contravenes the First Amendment of the United States Constitution. These two series of cases demonstrate it was clearly established when the Hospital filed its suit against Mr. Beedle that the Hospital was a governmental entity barred from bringing a malicious libel action. Consequently, the district court erred in dismissing the claims against Mr. Wilson and Mr. King in their individual capacities on qualified immunity grounds.

-21-

*C. Conspiracy claim against Angela Tovar*

Ms. Tovar received one of Mr. Beedle's letters regarding the alleged harm suffered by Ms. Korn while a patient at the Hospital. Ms. Tovar and Mr. Beedle subsequently had a telephone conversation in which Mr. Beedle told her he authored the letters she had received. Mr. Beedle alleges that Ms. Tovar conspired to violate his constitutional rights by submitting an affidavit stating that upon her receipt of one of the letters, she and Mr. Beedle had a telephone conversation in which he reported he was the letter's author and the hospital referred to in the letter was Jackson County Memorial Hospital. Mr. Beedle maintains that Ms. Tovar intended to help the other defendants file the libel lawsuit and thereby became a co-conspirator with the Hospital.[6]

As a private citizen, Ms. Tovar can be held liable under § 1983 only if she was a "willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Mr. Beedle does not allege that Ms. Tovar exerted influence over the Hospital, that her judgment was substituted for that of the Hospital, or that she even participated in the decision to file the libel suit. *Cf. Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442, 1453-55 (10th Cir. 1995) (collecting cases discussing § 1983 liability for private citizens). His

---

[6]Mr. Beedle has abandoned on appeal his claim that Ms. Tovar violated 18 U.S.C. § 2511(1)(a)-(c) (prohibiting disclosure of telephone communications).

allegations are insufficient to state a claim for relief against Ms. Tovar, and the district court correctly dismissed the complaint against her.

## D. Conspiracy claim against Philip Bohanon

Mr. Beedle also alleges that Mr. Bohanon, his former attorney, conspired with the Hospital and others to violate his constitutional rights. As a private actor, Mr. Bohanon cannot be held liable under § 1983 for conspiracy unless he participated in state action. *Dennis*, 449 U.S. at 27. Like the allegations against Ms. Tovar, Mr. Beedle's charges against Mr. Bohanon fail to establish that he influenced or even assisted the Hospital or anyone else in filing the libel suit. Accordingly, we agree with the district court's dismissal of the complaint against Mr. Bohanon.

## E. Claim against The Honorable Richard B. Darby

Judge Darby presided over the state libel lawsuit. Mr. Beedle maintains that because the Oklahoma Supreme Court ultimately held the Hospital was barred from bringing an action for libel, Judge Darby acted without authority and is liable under § 1983.

Federal courts have "consistently adhered to the rule that judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities." *Id.* (quotation omitted). A judge is immune from suit if he had subject matter jurisdiction over the alleged action.

*Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Id.* at 356-57 (quotation omitted).

Mr. Beedle does not challenge the district court's holding that Judge Darby served as a judge of a court of general jurisdiction which had the power to decide the instant controversy. The Oklahoma Supreme Court's decision to direct Judge Darby to dismiss the libel suit was not a decision that he acted in the clear absence of all jurisdiction. Accordingly, Judge Darby is entitled to absolute judicial immunity and we affirm the district court's dismissal of the complaint against him.[7]

F.   *Conspiracy claims against John Wampler and Mike Patterson*

Mr. Beedle claims that District Attorney Wampler and Police Chief

---

[7]Ms. Korn alleges her federal rights were violated when Judge Darby refused to permit her to intervene as a party in the libel suit. In similar fashion to our determination that Ms. Korn lacks standing to seek redress from the Hospital's decision to filed the state libel action, *see supra* note 1, we hold that Ms. Korn has failed to sufficiently identify a federal right that was violated as a result of the denial of her motion to intervene. Moreover, this court will not interfere in the decisions of a state court. *See Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1107-08 (10th Cir. 2000) (explaining that a federal court generally does not have jurisdiction over challenges to state court proceedings). Ms. Korn thus failed to state a claim against Judge Darby and the district court correctly dismissed her action in this regard.

Patterson conspired to violate his constitutional rights by aiding and abetting the Hospital in filing the libel suit. He further alleges that Mr. Wampler and Mr. Patterson had a duty to intervene and stop the Hospital from filing the action.

Liability under § 1983 requires personal participation in the unlawful acts. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Mr. Beedle failed to allege any facts showing that Mr. Wampler and Mr. Patterson participated in a conspiracy or acted improperly in any way. Moreover, Mr. Beedle's duty to intervene argument is without merit. The district court correctly dismissed the claims against Mr. Wampler and Mr. Patterson.

G.  *Constitutional and conspiracy claims against the law firm and individual attorneys employed there*

Mr. Beedle also sued the firm of Fenton, Fenton, Smith, Reneau and Moon, as well as a number of individual attorneys employed there. He claims that these defendants, by filing and prosecuting the libel suit on behalf of the Hospital, violated his constitutional rights and participated in a conspiracy to violate the same.

Because the attorney defendants are private actors, Mr. Beedle can only state a cognizable §1983 claim against them if he adequately alleges that these defendants conspired with the Hospital to violate his federal rights. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (liability under § 1983 requires showing that deprivation of federal right was committed under color of

state law).  "The conduct of an attorney acting in his professional capacity while representing his client does not constitute action under color of state law for the purposes of § 1983."  *Goetz v. Windsor Cent. School Dist.*, 593 F. Supp. 526, 528 (N.D.N.Y. 1984).  Likewise, when a plaintiff attempts to assert the state action required for a § 1983 claim against private actors based on a conspiracy with government actors, "mere conclusory allegations with no supporting factual averments are insufficient."  *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983).  Rather, the plaintiff must specifically plead "facts tending to show agreement and concerted action."  *Id.*

Mr. Beedle bases his conspiracy claims against the defendant law firm and its attorneys on a variety of factors: the length of time the state libel suit was pending before it was dismissed, his view that these defendants had access to unlimited legal research, and his opinion that the defendants could have instituted checks to insure that the suit was not filed.  At most, Mr. Beedle's complaint alleges the law firm provided inadequate professional services to the Hospital, and was potentially slow in its litigation of the case.  However, "[t]here is no allegation that [the firm had] a direct interest in this lawsuit or . . . was acting in any capacity other than as . . . privately retained [counsel]."  *Goetz*, 593 F. Supp. at 528-29.  Mr. Beedle's allegations, even if true, are insufficient to state a § 1983 claim for conspiracy.  Accordingly, we affirm dismissal of the complaint against

the attorney defendants and law firm.

*H.     Sexual assault claim against the Hospital, Trisha Hasty and Elaine Brown*

Ms. Korn alleges that Ms. Hasty, a nurse's aid, committed several sexual batteries against her while she was an inpatient at the Hospital and that Ms. Brown, a nurse, is liable for those injuries due to her negligence and lack of vigilance.  Ms. Korn also apparently contends that the Hospital is equally responsible for Ms. Hasty's alleged acts.  Ms. Korn asserts that the assaults violated her federal rights to equal protection, privacy, bodily integrity, and due process.

In order for the Hospital to be liable to Ms. Korn for Ms. Hasty's alleged sexual assaults, Ms. Korn must be able to point to the existence of an official policy or custom of the Hospital that resulted in constitutional harm to Ms. Korn. *Monell*, 436 U.S. at 691.  "The official policy requirement [is] intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479 (quotations omitted).  Likewise, to the extent Ms. Korn alleges that Ms. Brown, in possessing some form of supervisory authority over Ms. Hasty, should be liable for the alleged harms suffered by Ms. Korn, we note that "there is no concept of strict supervisor liability under section 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th

-27-

Cir. 1996) (quotation and citation omitted). In order to impose supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation." *Id.* Rather, "the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights. A plaintiff may satisfy this standard by showing the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." *Id.* at 994-95 (quotations and citations omitted).

Ms. Korn's allegations do not satisfy these standards. With regard to the Hospital, neither Ms. Korn's original complaint nor amended complaint "identif[ied] a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of County Comm'rs*, 520 U.S. at 403. The district court did not err in granting the Hospital's motion to dismiss Ms. Korn's sexual assault claims.

Likewise, Ms. Korn's allegations against Ms. Brown are insufficient. While a liberal reading of Ms. Korn's complaint might allow for the inference that Ms. Brown served in some sort of supervisory capacity over Ms. Hasty, the complaint does not allege Ms. Brown engaged in any intentional or deliberate acts against Ms. Korn, or that she "personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." *Jenkins*, 81 F.3d at 995. At most, Ms. Korn's complaint can be read to allege that Ms. Brown was

-28-

the supervisor of the Hospital's Skilled Nursing Unit; that Ms. Hasty assisted Ms. Brown in the unit during the same hours Ms. Brown worked; and that Ms. Brown "was present, in charge, and working with [Ms. Hasty]" on the dates on which Ms. Korn allegedly was sexually assaulted. Rec., vol. II, doc. 83 at 14. These allegations are insufficient to state a claim against Ms. Brown.

Nor are Ms. Korn's allegations sufficient to state a claim against Ms. Hasty. In *West v. Atkins*, 487 U.S. 42 (1988), the Supreme Court stated "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when [she] abuses the position given to [her] by the State while . . . exercising [her] responsibilities pursuant to state law." *Id.* at 49-50. We have recognized "it is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995) (citation and quotation omitted). "[I]t is the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" *Id.* at 494. Ms. Korn has failed to meet this burden.

The question is whether Ms. Hasty exercised power "possessed by virtue of state law and made possible only because [she] is clothed with the authority of state law." *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299,

326 (1941)). Ms. Korn's complaint alleged Ms. Hasty was a nurse's aid employed at the hospital where Ms. Korn received treatment; that Ms. Hasty served on the 11 p.m. to 7 a.m. shift; and that on five separate occasions at approximately 1:15 a.m., Ms. Hasty sexually assaulted Ms. Korn when she was particularly vulnerable due to heavy sedation as a result of the medications she had been prescribed. These alleged facts, while abhorrent, do not establish that Ms. Hasty, in sexually assaulting Ms. Korn, was in any way exercising "state-derived authority over her." *Whitney v. New Mexico*, 113 F.3d 1170, 1174 (10th Cir. 1997). Instead, they merely suggest Ms. Hasty engaged in conduct wholly unrelated to her duties and authority as a nurse's aid, conduct that could have been done by anyone who wandered into Ms. Korn's room. There was no allegation, for example, that Ms. Hasty was the one who heavily sedated Ms. Korn to enable her to carry out the alleged assault. Because Ms. Korn failed to sufficiently allege facts required for a § 1983 claim – that Ms. Hasty, while acting under color of state law, violated her constitutional rights, the district court properly dismissed the claims against Ms. Hasty.

For the foregoing reasons, we **REVERSE** the district court's dismissal of Mr. Beedle's First Amendment claims against the Hospital and against Mr. Wilson and Mr. King, in their official and individual capacities, and **REMAND** these claims for further proceedings consistent with this opinion. We **AFFIRM**

with respect to all other claims dismissed by the district court.[8]

---

[8]Mr. Beedle and Ms. Korn filed five separate reply briefs, contrary to FED. R. APP. P. 28(c), and they request the court's permission to file them all. We deny their motion because they have not demonstrated they could not reply adequately by filing a single reply brief. In any event, we have no doubt that we have comprehended fully Mr. Beedle's and Ms. Korn's arguments and authorities.

Similarly, we deny as moot Mr. Beedle's and Ms. Korn's "Motion to Reverse, Vacate, and/or Remand." We accept Mr. Patterson's separate answer brief and the two briefs filed by the Hospital, one addressing the First Amendment Claims and the other addressing sexual battery matters. All other pending motions are denied.