**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

HOWARD SHEWARD, JR.,

    Plaintiff - Appellant,

v.

CITY OF HENRYETTA; JENNIFER
CLASON; and FOUNTAIN VIEW
MANOR, INC.,

    Defendants - Appellees.

No. 19-7036
(D.C. No. 6:18-CV-00295-RAW)
(E.D. Oklahoma)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Howard Sheward, Jr. is a politically active resident of the City of Henryetta,

Oklahoma. On August 31, 2018, Mr. Sheward filed suit against the City of Henryetta

("the City"), Jennifer Clason, and Fountain View Manor, Inc. ("FVM"). Mr. Sheward

brought three claims against all defendants: (1) First Amendment retaliation pursuant to

42 U.S.C. § 1983, (2) conspiracy to deprive him of his First Amendment rights pursuant

to 42 U.S.C. § 1985, and (3) "Malicious Prosecution and Abuse of Process" pursuant to

42 U.S.C. § 1983. The district court granted summary judgment to defendants on all

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

claims. We affirm the judgment below because Mr. Sheward has waived his right to appellate review by failing to adequately brief any issue on appeal.[1]

## I.    BACKGROUND

### A. *Factual History*

Mr. Sheward lives in the City of Henryetta, Oklahoma, across the street from FVM, a private nursing home. Ms. Clason, the administrator and part owner of FVM, was also the Mayor of the City of Henryetta during the relevant time period. Mr. Sheward's claims against the City, Ms. Clason, and FVM arise out of communications from the City and two lawsuits filed against Mr. Sheward in Oklahoma state court: a declaratory judgment action brought by the City and Ms. Clason, and a separate defamation action brought by FVM.

**1. The City and Ms. Clason's Declaratory Judgment Action**

In 2010, Mr. Sheward successfully used the initiative petition process outlined in title 34 of the Oklahoma Statutes to initiate an audit of the City by the Oklahoma State Auditor and Inspector pursuant to title 74, § 212(L) of the Oklahoma Statutes. In 2015, the Oklahoma State Auditor and Inspector issued an Investigative Audit report for the period of July 1, 2010, through June 30, 2012. The Investigative Audit explored, *inter alia*, whether the City had complied with the Oklahoma Open Meeting Act and the Oklahoma Open Records Act. The Investigative Audit also reviewed the possible misuse, mismanagement, or misappropriation of funds for the City's new water system.

---

[1] Our decision not to reach the merits should not be interpreted as indicating a disagreement with the district court.

2

In 2016, Mr. Sheward submitted another initiative petition to the Henryetta City Clerk for certification. This petition requested that a proposed amendment to the City's Charter be placed on the ballot for approval during the City's next regular election in August of 2016. The proposed amendment would have prevented the City Council from raising water, sewer, or garbage collection rates without first submitting the increase to the voters for approval or rejection. The City Clerk found the petition insufficient in several respects and rejected it on May 11, 2016. Mr. Sheward did not appeal this decision.

On May 19, 2016, the City and Ms. Clason jointly filed a petition for declaratory judgment against Mr. Sheward in the District Court of Okmulgee County. The declaratory judgment action alleged that Mr. Sheward "made numerous accusations to the office of the State Auditor of Oklahoma that the City had denied due process for the Initiative Petition and otherwise acted inappropriately in finding the Initiative Petition to be fatally flawed." App., Vol. I at 229. The declaratory judgment action also alleged that Mr. Sheward's accusations to the State Auditor included "statements that the City regularly wastes public funds" and that these statements were unsupported by the Investigative Audit published in 2015. App., Vol. I at 229–30. The action sought "a declaration that the City and [City] Clerk acted appropriately in finding the Initiative Petition to be deficient and fatally flawed under Oklahoma law, costs and attorney's fees, and any other relief to which [the Petitioners] are entitled." App., Vol. I at 230.

On October 23, 2016, Mr. Sheward contacted the attorney representing the City and Ms. Clason in the declaratory judgment action to resolve the case because the August

3

2016 election had passed. The case remained at a standstill until counsel for Mr. Sheward entered an appearance and filed a motion to dismiss on July 19, 2017. After the parties had fully briefed Mr. Sheward's motion to dismiss, the City and Ms. Clason voluntarily dismissed the declaratory judgment action without prejudice on August 21, 2017.

## 2. Third Initiative Petition and the City's Response

During the fall of 2016, while the declaratory judgment action was pending, Mr. Sheward circulated a third petition that, like the first petition, sought an investigative audit of the City. The county election board validated the third petition. The City Council subsequently held a meeting at which it discussed the third petition and a water rate increase to pay for the requested audit. Two undated articles from TheHenryettan.com document statements made at that City Council meeting.[2] At that meeting, Ms. Clason said, "If we can get everybody to come together to stop the petitions, it would be a significant change in the city." App., Vol. III at 696. She additionally noted that citizens "were told that if they signed the petition, their water bills can't be raised." App., Vol. III at 696, 742. The second article reports that Ken Williams, the attorney who represented the City in the declaratory judgment action, "said ultimately a class action lawsuit against [Mr.] Sheward as well as others who were passing around the petition could be filed."

---

[2] Based on these two undated articles, the City Council meeting likely took place in December of 2016, or at least prior to January 31, 2017. The first article reports that "[a] letter explaining the surcharge and the audit petition is going to be mailed along with the utility bills in January." App., Vol. III at 696. A letter explaining the surcharge and audit petition was sent with utility bills and dated January 31, 2017. The second article reports on a water rate increase "[s]tarting in February" and references a statement made at "the December city council meeting" that mirrors a statement documented in the first article. App., Vol. III at 742.

4

App., Vol. III at 742. "Local residents . . . and city attorney John Insabella [were] looking for people who want to provide affidavits." App., Vol. III at 742.

In early 2017, the City enclosed a letter dated January 31, 2017, (the "January 2017 letter") with each citizen's water bill. The letter explained that a new $6 monthly charge would be added to each water bill to pay for a special audit.[3] The letter reads in full:

> As you will see in your next water utility statement from your Municipal Authority, a new $6 monthly charge is included. This new charge is an unfortunate necessity to generate funds to pay the Oklahoma State Auditor and Inspector for a Special Audit requested by misinformed residents of our City. A copy of the CITIZEN PETITION REQUEST FOR SPECIAL AUDIT BY THE STATE AUDITOR & INSPECTOR is available upon request at City Hall but the specific language causing the new charge for your water service is as follows:
>
> > "The estimated cost of said investigation will range from $50,000 to $75,000, which shall be paid by the City of Henryetta, Okmulgee County, Oklahoma, in accordance with 74 0.S. §212(L)(7)."
>
> One of the specific accusations made by misinformed residents of our City is the "Use of public resources for private benefit including compliance with regulations governing cleanup of raw sewage." Your Municipal Authority can assure you that the accusation is completely false but the Special Audit must still be performed by law. Payment of the cost of the Special Audit is not an anticipated item in your Municipal

---

[3] The district court stated, "The [letter] explained that a new $6 monthly charge was included to pay for the cost of the *previous* Audit." App., Vol. III at 903 (emphasis added). On appeal, Mr. Sheward contends that this statement is incorrect.

Mr. Sheward testified that a "second citizens petition for an audit . . . was validated in the fall of 2016." App., Vol. I at 195. One of the news articles corroborates Mr. Sheward's testimony, noting that the $6 charge was prompted by "notification that a petition to the state Auditor's office was valid." App., Vol. III at 696. The news article explains, "The petition . . . is the second one that has the necessary number of signatures to force an audit." App., Vol. III at 696. Thus, the $6 charge appears to relate to a separate, second audit that was requested in 2016.

Authority's 2017 budget or the City's 2017 budget, which is why the new charge is necessary.

The irony of the situation is that many residents who signed the CITIZEN PETITION REQUEST FOR SPECIAL AUDIT BY THE STATE AUDITOR & INSPECTOR did so because they were told by the persons circulating the PETITION that the goal was to reduce the cost of water service, which was a false statement. Your Municipal Authority regrets the necessity of the new charge and commits to cancel the new charge just as soon as the cost of the Special Audit is paid.

App., Vol. III at 695.

### 3. FVM's Defamation Action

On December 23, 2014, Mr. Sheward submitted an open records request regarding city services provided to address sanitary issues at FVM. In 2015, FVM hired a private contractor to make repairs related to a sewer issue. The private contractor serviced FVM's facility and repaired an issue with the City's sewer line that runs underneath FMV's property. Mr. Sheward claims he observed city personnel using a sump truck during those repairs, which caused him to believe "that [Ms.] Clason was taking advantage of her position [on City Council] in order to avoid hiring a private contractor to assist in any sewage cleanup." App., Vol. I at 31–32.

On July 31, 2015, FVM filed a Notice of Tort Claim with the City, claiming $102,953.96 in damages for repairs FVM made to the City's sewer line. On August 2, 2015, Mr. Sheward submitted an open records request to the City, seeking documents related to inspections and construction of FVM.

At a City Council meeting in September of 2015, FVM requested the City pay $39,500 toward the cost of the sewer repairs. Following that meeting, Mr. Sheward

6

prepared and distributed a flyer requesting that citizens contact the City Council to encourage the Council to reject FVM's settlement demand. On October 9, 2015, Mr. Sheward renewed his 2014 records request. The City never responded to Mr. Sheward's 2014 records request.

On October 21, 2015, FVM filed a lawsuit against Mr. Sheward in state court, bringing claims of slander per se and libel per se. The lawsuit also sought a permanent injunction to prohibit Mr. Sheward from trespassing on FVM's property. After Mr. Sheward agreed to refrain from certain activities, FVM moved to dismiss the lawsuit without prejudice on January 20, 2016, and the state court granted that motion on January 22, 2016. On January 27, 2016, Mr. Sheward corresponded with some local journalists by email, telling them that the defamation action was frivolous. On February 10, 2016, FVM refiled the lawsuit, incorporating Mr. Sheward's new comments.

On January 5, 2018, the state district court denied FVM's motion for summary judgment and granted Mr. Sheward's motion for summary judgment. The state court found that Mr. Sheward

> has presented substantial evidence that [FVM] engaged in "Strategic Litigation Against Public Participation" – or "SLAPP" litigation – when it filed this lawsuit, which is prohibited under Oklahoma law, specifically: [FVM] filed the above-captioned matter primarily as its purpose to silence [Mr. Sheward] from being critical of "public figures" about "matters of public concern." [FVM's] alleged injuries, if any, were the result of [Mr. Sheward's] privileged communications involving the "right to petition" and/or "right to free speech" that are protected by the First Amendment to the United States Constitution.

App., Vol. II at 415.

7

On April 5, 2019, the Oklahoma Court of Civil Appeals affirmed the state district court's grant of summary judgment to Mr. Sheward. The appellate court concluded that Mr. Sheward "successfully demonstrated FVM brought suit against him in an effort to keep him from publicly criticizing the mayor and questioning the use of city finances." App., Vol. II at 561. The appellate court reasoned that "[t]he mayor's own deposition testimony indicates [Mr.] Sheward's silence was the objective of the lawsuit as well." App., Vol. II at 561. On November 18, 2019, the Oklahoma Supreme Court denied FVM's petition for certiorari.

## B. *Procedural History*

Mr. Sheward filed the present suit in the United States District Court for the Eastern District of Oklahoma against the City, Ms. Clason, and FVM on August 31, 2018. He filed a First Amended Complaint on November 6, 2018. In that First Amended Complaint, Mr. Sheward brought three claims against all defendants: (1) a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983, (2) a claim alleging a conspiracy to deprive him of his First Amendment rights pursuant to 42 U.S.C. § 1985, and (3) a "Malicious Prosecution and Abuse of Process" claim pursuant to 42 U.S.C. § 1983.

Defendants moved for summary judgment on all claims and the district court granted the motions. The district court concluded that (1) the statute of limitations had lapsed on Mr. Sheward's § 1983 First Amendment retaliation claim, (2) Mr. Sheward had failed to demonstrate any class-based invidiously discriminatory animus as required to succeed on his § 1985 claim, and (3) Mr. Sheward's "Malicious Prosecution/Abuse of

8

Process" claim failed because it was not based on a criminal prosecution and a Fourth Amendment violation. Mr. Sheward timely filed his notice of appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.    DISCUSSION

Pursuant to Federal Rule of Appellate Procedure 28(a)(8)(A), an appellant's brief "must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." "Consistent with this requirement, we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). Accordingly, "issues will be deemed waived if they are not adequately briefed." *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002), *as modified on reh'g*, 319 F.3d 1207 (10th Cir. 2003); *see also Phillips v. Calhoun*, 956 F.2d 949, 954 (10th Cir. 1992) ("[I]ssues designated for review are lost if they are not actually argued in the party's brief.").

"It is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal." *Am. Airlines v. Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992). Similarly, an issue is not adequately briefed when it is "merely includ[ed] . . . within a list." *Utahns for Better Transp.*, 305 F.3d at 1175. To advance a reasoned argument, an appellant must support his position with legal argument and authority. *Phillips*, 956 F.2d at 953–54. And incorporating by reference arguments made in the district court does not satisfy the briefing requirements of Rule 28. *United States v. Patterson*, 713 F.3d 1237, 1250 (10th

9

Cir. 2013) ("[P]arties appearing before this court cannot satisfy Rule 28 by incorporating their claims by reference to either appendices or records from the court below."); *see also Fulghum v. Embarq Corp.*, 785 F.3d 395, 410 (10th Cir. 2015) (explaining that incorporating by reference briefing below "is not acceptable appellate procedure" because "[a]llowing litigants to adopt district court filings would provide an effective means of circumventing the page limitations on briefs set forth in the appellate rules and unnecessarily complicate the task of an appellate judge" (quotation marks omitted)).

Mr. Sheward's brief demonstrates a misunderstanding of the nature of this court's review of the record below and his responsibility to brief arguments on appeal. According to his statement of the issues on appeal, Mr. Sheward intended to challenge the district court's grant of summary judgment on each of his three claims. But he has waived his right to appellate review by failing to develop and advance a reasoned argument to support any of his three assignments of error. *Phillips*, 956 F.2d at 954.

With respect to Mr. Sheward's § 1983 First Amendment retaliation claim, he provides no legal argument or citation to authority to support his contention that the district court erred when it concluded that his First Amendment retaliation claim was untimely.[4] Rather, Mr. Sheward contends the district court failed to consider all the

---

[4] Mr. Sheward does not make any argument regarding the tolling of the statute of limitations, despite a statement of law in the standard of review section that he "carr[ies] the burden of proving the existence of facts which, if proven true, would warrant a tolling of the statutes of limitation." Aplt. Br. at 4 (citing *Dow v. Chilili Co-op Assn.*, 728 P.2d 462, 464 (N.M. 1986)). Mr. Sheward's brief is devoid of any other facts or authority from which we could divine a tolling argument. *See Dodds v. Richardson*, 614 F.3d 1185, 1205 (10th Cir. 2010) ("A court of appeals is not required to manufacture an appellant's

10

evidence in the summary judgment record, and he identifies six sets of evidentiary materials documenting various events and statements that he alleges are connected to the January 2017 letter.[5] Critically, however, Mr. Sheward fails to explain how the January 2017 letter is connected to a conspiracy between FVM and the City to retaliate against Mr. Sheward for exercising his First Amendment rights. Mr. Sheward also fails to explain how any of the events or statements related to the January 2017 letter constitute discrete acts of First Amendment retaliation, or to identify when any of those events or statements occurred.

With respect to Mr. Sheward's § 1985 conspiracy and § 1983 malicious prosecution/abuse of process claims, he contends the district court's dismissal of these claims was "clear error[]" and "[w]hen . . . considered in context with the First Amendment, . . . there is an abundance of caselaw/precedent that support Plaintiffs [sic] contentions." Aplt. Br. at 3. But Mr. Sheward does not advance any legal argument or cite any of the "abundan[t] caselaw/precedent" to counter the district court's conclusion

---

argument on appeal when it has failed in its burden to draw our attention to the error below." (quotation marks omitted)).

[5] One set of evidentiary materials listed is three video clips from at least one, perhaps more than one, City Council meeting. Although Mr. Sheward claims he submitted these clips with his response to FVM's motion for summary judgment, they were in fact submitted with his response to the City's motion for summary judgment. The record reflects that Mr. Sheward conventionally filed a DVD containing these clips in the district court. But Mr. Sheward has not electronically or conventionally filed these clips on appeal. We are "not obligated to remedy th[is] failure[] by counsel to designate an adequate record." *Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906, 910 (10th Cir. 2009). Without these video clips in the record on appeal, we are unable to verify Mr. Sheward's assertions about what they contain, and we need not consider his unverified allegations. *See* Fed. R. Civ. P. 56(c)(1)(A).

11

that his § 1985 claim fails as a matter of law. To be sure, Mr. Sheward's brief does include a block quotation from *Beedle v. Wilson*, 422 F.3d 1059 (10th Cir. 2005), related to his § 1983 malicious prosecution/abuse of process claim. Notably, this is Mr. Sheward's only citation to legal authority related to the merits of his appeal.[6] Mr. Sheward, however, does not advance any legal argument or otherwise explain how the quotation from *Beedle* alters the district court's conclusion that his § 1983 malicious prosecution/abuse of process claim fails as a matter of law.

Rather than develop a reasoned argument on appeal, Mr. Sheward attempts to incorporate by reference his briefing below:

> The factual and legal arguments advanced by Plaintiff throughout the summary judgment briefing was [sic] extensive, and won't be regurgitated word for word in this appellate brief. Given that this Court's review will be restricted to the summary judgment motions to be submitted to this Court, the Plaintiff is extremely confident that a review will result in a full reversal on all counts.

Aplt. Br. at 11. Not only does this incorporation by reference fail to comport with the requirements of Rule 28, it is also insufficient to invoke our appellate review. *Patterson*, 713 F.3d at 1250 (explaining a party must develop an argument in "*this court*" to preserve a claim for appellate review).

In sum, Mr. Sheward has failed to develop a reasoned argument on appeal with respect to any of his three claims of error because he does not explain the significance of his record citations, elaborate on his single citation to authority related to the merits, or

---

[6] The other authority cited in Mr. Sheward's brief pertains solely to his jurisdictional statement and the appropriate standard of review.

otherwise advance any legal argument to support the conclusion that the district court erred. *Phillips*, 956 F.2d at 953–54. We will not craft Mr. Sheward's arguments for him. *See Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999). Therefore, Mr. Sheward has waived his right to appellate review by failing to adequately brief his challenges to each of the district court's conclusions.

## III.   CONCLUSION

Because Mr. Sheward failed to adequately brief the issues on appeal, he has waived his right to appellate review, and so we **AFFIRM** the district court's grant of summary judgment to defendants on all claims.

Entered for the Court

Carolyn B. McHugh
Circuit Judge