**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 23, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

STEPHEN THENE SPARKS,

Plaintiff-Appellant,

v.

K. RITTENHOUSE,

Defendant-Appellee.

No. 04-1086
(D.C. No. 02-MK-2356 (BNB))
(D. Colo.)

---

**ORDER AND JUDGMENT***

---

Before **HARTZ**, and **BALDOCK**, Circuit Judges, and **BRIMMER**,** District Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

** The Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation.

The question presented in this appeal is whether the district court erred in dismissing with prejudice Appellant Stephen Thene Sparks's civil rights complaint, *see* 28 U.S.C. § 1983, on the ground that it failed to state a claim for which relief could be granted. We have jurisdiction under 28 U.S.C. § 1291. In our view the allegations set forth in Mr. Sparks's various pleadings indicate that he could state a cause of action in a proper complaint if afforded the opportunity. We therefore vacate the district court's order of dismissal and remand with instructions to allow Mr. Sparks 30 days to file an amended complaint.

### BACKGROUND

Mr. Sparks bases his claim on alleged misconduct in treating his shoulder pain. His initial complaint and the attached grievance documents set forth the following account: Beginning in March of 2001, Mr. Sparks, then a prisoner at the state correctional facility in Limon, Colorado (LCF), experienced continuous pain in his right shoulder. Between March 8, 2001, and September 24, 2001, he had his shoulder examined at least eight times, evidently on more than one occasion by Defendant K. Rittenhouse, a medical professional at LCF, and received more than one diagnosis of the cause of his pain. In May 2002 he was examined by an orthopedic specialist at the Denver Health Medical Center (DHMC), who "discover[ed] bone fragments within [Mr. Sparks's] right

shoulder," R., Doc. 2, at 5[1], and recommended surgery. A request for surgery was submitted to Colorado Access, the prison's insurance company, and denied. The denial was received at LCF on June 26, 2002, and was "signed off on" by Ms. Rittenhouse on July 26, 2002, but it was not relayed to Mr. Sparks until August 14, 2002, after he had again requested medical treatment for his shoulder. *Id*. at 6. The denial stated that "appeal could be filed within 60 days of receipt of denial." *Id*. Mr. Sparks filed his informal grievance against Ms. Rittenhouse after he received the denial, alleging that "[she] failed to inform [him] of the denial for surgery until 45 days after receipt [by the] facility." *Id*.

In his Step One grievance Mr. Sparks repeated his claims and added that Ms. Rittenhouse had falsely stated that he had refused treatment. In response Ms. Rittenhouse's supervisor informed Mr. Sparks that Colorado Access had agreed to allow an appeal to be filed outside the 60-day window, but that "it [was the specialist's] decision whether to appeal the denial" and that Mr. Sparks's chart showed that the specialist had been contacted and was not appealing. *Id*. at 9. In his Step Two grievance Mr. Sparks alleged that:

> the response given by respondent is contradictory to response given by . . . Colo. Access. [The specialist] stated that he does not file

---

[1]    Because Mr. Sparks added pages within his form complaint and other filings that he failed to number, page cites in this order and judgment will be to the actual page numbers of the document being examined and not necessarily to the printed numbers.

appeals for the needed surgery . . . . Lack of communication between the DOC [Department of Corrections], DHMC, and Colo. Access has stalled the medical treatment needed. Note, appeals from inmates to Colo. Access are not accepted for they hold no merit.

*Id*. at 10. The Step Two grievance was responded to by the clinical team leader of the medical department, who informed Mr. Sparks that "[i]t is the [specialists'] responsibility to appeal their recommendations if denied by Colorado Access," *id*. In his Step Three grievance Mr. Sparks again complained that the specialist

> stated he does not file appeals for medical treatment, that this was an issue between [Mr. Sparks] and DOC. In his own words, his job is to do the surgery, not file appeals. . . . The delay and lack of communication between CDOC and DHMC compound[ed] with the ineffectiveness of LCF medical, my shoulder is resulting to [sic] irreparable damage.

*Id*. at 14. The responding "Step III Grievance Officer" stated, "It is the obligation of the [specialist] to appeal [Colorado Access's] decision if he feels the surgery is necessary. From what you say he has decided not to appeal. . . . Perhaps he feels the surgery is not necessary." *Id*. at 13.

After obtaining no relief through the grievance process, Mr. Sparks filed his complaint on December 17, 2002. It includes the factual allegations set forth above and alleges that "[he] has been denied medical treatment and medication prescribed by . . . [the] Specialist," *id*. at 4, and that Ms. Rittenhouse, and the

other defendants originally named in the suit,[2] "violated [his] rights under the 8th and 14th amendments . . . , by denying [him] Medical Treatment through a deliberate indifference to [his] injuries." *Id*. at 5. The complaint charges that LCF (which was not a named party) had "neglected to follow procedures and guidelines . . . governing inmate health care" and had "neglected to administrate the necessary procedure to communicate between its self [sic], Colorado Access . . . and [DHMC,] [d]enying [Mr. Sparks] medical care/treatment," *id*. at 4; and that, despite the fact "that the Orthopedic Specialist had recommended that anti-inflammatory medication be issued to [Mr. Sparks] as part of his treatment[, LFC] medical staff failed to prescribed [sic] treatment as recommended by [the] Orthopedic Specialist," *id*. at 6. Regarding Ms. Rittenhouse specifically, the complaint alleges that she denied him medical care, that her denial was "[w]illful[] and negligent[]," and that she "express[ed a] personal view of non-incarcerated people not receiving [the same quality] medical treatment[] as inmates." *Id*. at 3. Also, one of the attached grievances recites:

> As stated by [Ms.] Rittenhouse, had I needed the surgery prior to the budget crisis, it would have been done. In essence her statement is, I

---

[2]     Mr. Sparks originally sued not only Ms. Rittenhouse but the Colorado Department of Corrections, the warden of LCF, Colorado Access, DHMC, and two of the prison officials who responded to his prison grievances. All defendants but Ms. Rittenhouse were later dismissed, and Mr. Sparks does not appeal that dismissal.

-5-

am being denied medical treatment due to budget issues resulting
from post 9/11/01 event.

*Id*. at 10.

On April 3, 2003, Ms. Rittenhouse filed a motion to dismiss Mr. Sparks's complaint. One contention was that his "allegations . . . fail as a matter of law because the complaint fails to state a claim for deliberate indifference and, [Ms. Rittenhouse] is entitled to qualified immunity." *Id*., Doc. 10, at 1. Ms. Rittenhouse argued that Mr. Sparks's "allegations simply state that he wants to have surgery on his right shoulder and others do not agree," *id*. at 2, and that "there [was] no factual allegation that would show that any failure to provide care was the result of deliberate indifference–rather than mere negligence," *id*. at 4.

Mr. Sparks filed a "Response to Defendant Motion to Dismiss," *id*., Doc. 15, in which he argued that his allegation in the complaint that Ms. Rittenhouse stated, "Non incarcerated people [not] receiving [the same quality] medical treatment as inmates," had adequately alleged deliberate indifference, *id*. at 2 (approximately quoting R., Doc. 2, at 3). He also alleged that Ms. Rittenhouse "verbally ridiculed [him] for complaining and questioning DOC Administrative Regulations," that Ms. Rittenhouse should "not [have] subject[ed] inmates to 'ridicule and dersion [sic]' in response to complaints of pain," that deliberate indifference was shown "from [her] ridicule and negative comments," and that she "violated the 8th Amendment by intentionally denying or delaying access to

-6-

medical care." *Id.* at 5 (internal quotation marks omitted). Ms. Rittenhouse's reply stated that Mr. Sparks "does not have a 'serious' medical condition," and that he had "failed to allege any facts that would support an inference that [Ms.] Rittenhouse knew about and disregarded a 'substantial risk of harm' to his health or safety." *Id.*, Doc. 17, at 2.

On June 20, 2003, Mr. Sparks filed a pleading (June Motion to Amend) with the following two-line title: "Motion to Amend Pleading (CRCivP 15)" on the first line, and "Plaintiff's Response to Defendant Motion to Dismiss" on the second line. *Id.* Doc. 19. In it, Mr. Sparks "request[ed] leave to amend his Complaint," and stated that "[t]he proposed amendment incorporates evidence that support[s] deliberate indifference attributed to [Ms. Rittenhouse]." *Id.* In the memorandum in support of his June Motion to Amend, Mr. Sparks asserted that Ms. Rittenhouse "refused to fulfill her duties as [a] Physician Assistant (PA) based on her personal views, supporting Deliberate Indifference." *Id.*, Doc. 20, at 1. He further alleged that after he filed his complaint he was transferred from LCF to the Sterling Correctional Facility (SCF), and that when he arrived at SCF, the medical staff, after interviewing him about "not receiving required medication [at LCF]," called Colorado Access "expressing the need to preform [sic] surgery on [his] right shoulder." *Id.* at 1-2. Mr. Sparks attached to the memorandum a note showing that he was to be scheduled for shoulder surgery, and alleged that

"[t]hrough a retaliatory action, [he was] receiving the much needed surgery," *id.* at 2. He argued that the assistance he received at the new prison showed that Ms. Rittenhouse had refused "to fulfill her duties as a care handler" to him. *Id.* Mr. Sparks stated: "A jury trial would bring forth evidence that it is the duty of the [physician assistant] to secure medical treatment when necessary to the health of the inmate." *Id.*

Ms. Rittenhouse responded to the June Motion to Amend by filing two separate pleadings, one addressing amendment of the complaint and one addressing Mr. Sparks's argument in response to the motion to dismiss. On the amendment issue Ms. Rittenhouse complained that Mr. Sparks had not included an amended complaint with his motion to amend but argued that the motion should be denied in any event because (1) it "[was] an attempt to escape a possible ruling . . . grant[ing Ms. Rittenhouse's] Motion to Dismiss," *id.*, Doc. 24, at 2, and (2) it "alleges acts or conduct that [were] not even acts or conduct by [Ms.] Rittenhouse and therefore [are] not relevant to the claims he has filed against her," *id.*, at 3. On the subject of the motion to dismiss, Ms. Rittenhouse addressed the merits and also argued that the deadline to file responses to the motion to dismiss had long since passed.

Mr. Sparks thereafter filed a document entitled "Motion to Amend Pleading (FRCivP15)" (October Motion to Amend), *id.*, Doc. 28, primarily to amend his

prayer for relief to remove his request for surgery. No proposed complaint was attached.

The magistrate judge granted Mr. Sparks's June Motion to Amend in a minute order that simply stated that the matter before the court was Mr. Sparks's "Motion to Amend Pleading (CRCivP 15) Plaintiff's Response to Defendant Motion to Dismiss" and that the motion was granted. *Id.*, Doc. 37. The minute order was entered the same day the magistrate judge entered his recommendation.

In his recommendation the magistrate judge noted Mr. Sparks's repeated use of the word negligence in regard to Ms. Rittenhouse's actions and found that:

> [Mr. Sparks's] allegations, at most, accuse [Ms.] Rittenhouse of negligence in failing to timely notify [Mr. Sparks] that Colorado Access denied his recommended surgery. These allegations fall far short of the factual allegations that are required to state a claim for deliberate indifference under the Eighth Amendment.

*Id.*, Doc. 35, at 5-6. In a footnote the magistrate judge stated that Mr. Sparks "amended his Response to the Motion to Dismiss" and then addressed the June Motion to Amend. *Id.* at 5 n.3. The magistrate judge stated in regard to the motion, "Although I do not consider allegations made for the first time in a responsive pleading, I note that the amended response does not add any factual allegations regarding whether [Ms.] Rittenhouse acted with deliberate indifference. [Mr. Sparks] merely alleges that his medical condition was treated differently by different medical personnel." *Id.*

-9-

The magistrate judge recommended that Mr. Sparks's complaint be dismissed for failure to state a claim upon which relief could be granted, because his "allegations, at most, accuse [Ms.] Rittenhouse of negligence in failing to timely notify [Mr. Sparks] that Colorado Access denied his recommended surgery." *Id*. at 5. The magistrate judge also recommended that the October Motion to Amend be denied as moot.

Mr. Sparks filed objections to the magistrate judge's recommendations, reiterating his previous claims and thereby preserving them for appeal. *Cf. Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (holding that failure to object to magistrate judge's recommendation waived issue on appeal). The objections discussed the factual allegations supporting Mr. Sparks's claims in greater detail than had his previous pleadings. As to Ms. Rittenhouse's state of mind, Mr. Sparks asserted that he talked with Ms. Rittenhouse after he discovered the denial of the surgery request and was told not only his surgery, but "all medical treatments," were being denied due to the events of September 11, 2001. R., Doc. 38, at 2. He alleged that when he told her his "claim was legitimate, [she] stated 'People on the street don't receive the medical treatment as inmates do . . . [O]nce the economy recovers you'll receive the surgery." *Id*. (ellipses in original). He said that she added that this could take "up to ten years." *Id*. Mr. Sparks claimed that the specialist told him that he "wanted to perform . . .

surgery" but that it was not his responsibility to file appeals. *Id.* at 2-3. Mr. Sparks also alleged that after his transfer, the physician's assistant at SCF made one phone call and that "within the next 90 days [Mr. Sparks] received the needed and undu[ly] delayed surgery." *Id.* at 4. Mr. Sparks alleged that the "Objective Component" of his Eighth Amendment claim was satisfied by his allegations that the orthopedic specialist recommended surgery and anti-inflammatory medication and that the prescription recommendations "were not followed by [Ms.] Rittenhouse," *id.* at 5, but were followed by the physician assistant at SCF, *id.* at 7. Mr. Sparks alleged that "the 'Subjective Component' [of his Eighth Amendment claim] was met by [Ms. Rittenhouse's] discriminatory comments" and specifically noted her statement that he "was luck [sic] because people on the street did not receive medical treatment as inmates" *Id.* at 6.

The district court considered the matters raised by Mr. Sparks's objections and found that they did not alter the court's conclusion that Mr. Sparks's complaint failed to state a claim. It stated that "the sole indications in the Complaint that [Ms. Rittenhouse] arguably 'ignored' [Mr. Sparks's] needs" were the allegations that (1) Ms. Rittenhouse "failed to schedule an appointment for [Mr. Sparks with the specialist] after diagnosing [Mr. Sparks]," (2) "the facility–although not necessarily [Ms. Rittenhouse]–failed to administer the medication prescribed by the orthopedic specialist," and (3) Ms. Rittenhouse

failed to notify him "until 45 days into the 60-day appeal period" that the surgery request had been denied. *Id.*, Doc. 40, at 6-7. The district court adopted the magistrate judge's recommendation in full and dismissed the complaint on the grounds that Mr. Sparks had "presented no more than three isolated incidents arguably constituting negligence, occurring over a lengthy span of time in which he was seen by several medical practitioners and received treatment on numerous occasions," *id.* at 8, and "[m]ost importantly . . . [t]he sole harm caused by [Ms. Rittenhouse's] alleged conduct was to shorten the amount of time [Mr. Sparks] had to contemplate and file an appeal, not to deny him the opportunity to appeal outright," *id.* at 7-8. The district court also denied Mr. Sparks's October Motion to Amend as moot.

## STANDARD OF REVIEW

We review the dismissal of Mr. Sparks's complaint de novo. *Hunt v. Uphoff*, 199 F.3d 1220, 1223 (10th Cir. 1999). "In determining whether dismissal is proper, we must accept the allegations of the complaint as true and we must construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted). Also, we must liberally construe a *pro se* plaintiff's allegations. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could

-12-

prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."). We also look to the prison grievances attached to the complaint. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint."). We then examine the allegations and determine whether "it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Id*. (internal quotation marks omitted). In other words, dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (internal quotation marks omitted).

## ANALYSIS

The Eighth Amendment's prohibition against cruel and unusual punishment is violated when prison officials "act deliberately and indifferently to serious medical needs of prisoners in their custody." *Hunt*, 199 F.3d at 1224. Such a claim has both an objective and a subjective component. *Id*. To satisfy the objective component, a prisoner's medical need must be sufficiently serious, a standard that we have held is met when either a doctor has diagnosed the need as

-13-

requiring treatment or the need is so obvious that even a lay person would recognize the need for a doctor's attention. *Id.* To satisfy the subjective component, i.e., to show the requisite deliberate indifference, a prisoner must establish that the defendant "knew [the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id.* (internal quotation marks omitted). Although an Eighth Amendment claim regarding medical treatment generally concerns a medical professional's deliberate indifference in failing to treat a prisoner's serious medical condition properly, it may also arise when a prison official acts with deliberate indifference in preventing a prisoner from receiving treatment or denying him access to medical personnel capable of evaluating the need for treatment. *Sealock*, 218 F.3d at 1211. Even if the official preventing treatment is a medical official, the Eighth Amendment may be violated if the professional "knows that his [or her] role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he [or she] delays or refuses to fulfill that . . . role due to deliberate indifference." *Id.* Causation is also a necessary element of a § 1983 claim of deliberate indifference. *Daniels v. Gilbreath*, 668 F.2d 477, 488-89 (10th Cir. 1982).

The complaint contained sufficient factual allegations to support the objective component of the Eighth Amendment claim. Mr. Sparks alleged that he

had a serious shoulder injury for which the specialist recommended surgery and that the delay in receiving the surgery caused him considerable pain. Although "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm," such harm may be shown by proof that considerable pain resulted from the delay. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (internal quotation marks omitted). We recognize that "not every twinge of pain suffered as the result of delay in medical care is actionable," *Sealock*, 218 F.3d at 1210, but Mr. Sparks's allegations of numerous requests for medical treatment because of pain and his claims of loss of feeling, loss of grip, and "extreme pain," R., Doc. 20, at 2, sufficiently alleged substantial harm.

Addressing the subjective prong and causation is less straightforward. Although it is well-settled that Mr. Sparks ultimately must prove that Ms. Rittenhouse acted with deliberate indifference, it is unclear precisely how much he must plead. On one hand, we have said that a prisoner must allege facts, not just conclusory statements. *Hall*, 935 F.2d at 1110. On the other, we have ruled that civil rights claims need not be pleaded with any greater particularity than other claims. *See Currier v. Doran*, 242 F.3d 905, 912-16 (10th Cir. 2001). Regardless of the precise standard, however, we believe that the district court erred in dismissing Mr. Sparks's claim with prejudice because, at the least, "it

-15-

would [not] be futile to give [Mr. Sparks] an opportunity to amend [his complaint]." *Oxendine*, 241 F.3d at 1275 (internal quotation marks omitted). Because the magistrate judge granted Mr. Sparks's June Motion to Amend, it is appropriate to consider the allegations in that pleading and its supporting memorandum, together with his prior complaints, in determining whether he could submit an adequate complaint. (For reasons that are not clear from the record, the magistrate judge issued his recommendation to dismiss the complaint on the same day that he granted the motion to amend, so, understandably, Mr. Sparks never filed a further amended complaint.)

Mr. Sparks alleged in his original complaint that Ms. Rittenhouse's failures were intentional and that she had "express[ed a] personal view of non-incarcerated people not receiving [the same quality] medical treatment[] as inmates." R., Doc. 2, at 3. These allegations, when considered together with his allegation that Ms. Rittenhouse told him incorrectly that he did not receive the surgery due to the insurance company's budgetary constraints from the terrorist attacks on September 11, 2001, and his allegations regarding the failure to issue him anti-inflammatory medication recommended by the orthopedic specialist,[3] the

---

[3]    Although Mr. Sparks argues on appeal that Ms. Rittenhouse's failure to dispense anti-inflammatory medications to him was itself a violation of his Eighth Amendment rights, Mr. Sparks did not exhaust his administrative remedies with regard to such a claim through his prison grievances.

-16-

delay in his receipt of notice that the surgery request had been denied, and the ultimate failure to pursue an appeal on his behalf, discussed further below, could support an inference that Ms. Rittenhouse was deliberately indifferent to his plight. *See Garrett*, 254 F.3d at 950 (when considering deliberate indifference, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence"). "The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support [his] claims." *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (internal quotation marks omitted).

A closer question is whether Mr. Sparks has sufficiently alleged that the delay in his surgery was caused by Ms. Rittenhouse. Although the magistrate judge based his recommendation only on the ground that Mr. Sparks's complaint had not sufficiently pleaded deliberate indifference, the district court also found that the complaint had not adequately pleaded causation because "[t]he sole harm caused by [Ms. Rittenhouse's failure to timely notify Mr. Sparks of the denial of surgery ] was to shorten the amount of time [Mr. Sparks] had to contemplate and file an appeal, not to deny him the opportunity to appeal outright."[4] R., Doc. 40,

_____

[4] The magistrate judge did specifically note, however, that Mr. Sparks admitted that he learned of the denial of his surgery forty-five days into the sixty-
(continued...)

at 7-8. To be sure, Mr. Sparks's initial complaint did not specifically allege that Ms. Rittenhouse had the duty to appeal, perhaps because he did not know *which* party had the duty to appeal. In the memorandum supporting his June Motion to Amend, however, Mr. Sparks alleged that Ms. Rittenhouse's counterpart at SCF, after interviewing him about his "not receiving [the] required medication [at LCF]," was able to call Colorado Access and quickly arrange for the surgery. *Id.*, Doc. 20, at 2. Mr. Sparks argued that the assistance he received at the new prison showed that Ms. Rittenhouse had "refus[ed] to fulfill her duties as a care handler to [him]." *Id.* Mr. Sparks stated: "A jury trial would bring forth evidence that it is the duty of the [physician assistant] to secure medical treatment when necessary to the health of the inmate." *Id.* In our view, these allegations show that Mr. Sparks can file an amended complaint adequately alleging causation. The gist of his contention, as it developed over time, is that Ms. Rittenhouse was the gatekeeper both to the orthopedic specialist and the insurance company, and her deliberate failure to fulfill that role was the cause of the delay in his receiving surgery.

## CONCLUSION

---

[4](...continued)
day appeal period. R., Doc. 35, at 5 n.2.

The order of the district court dismissing Mr. Sparks's complaint is VACATED. Because Mr. Sparks did not file a proposed amended complaint with his June Motion to Amend, the case is REMANDED to the district court with direction that Mr. Sparks be given 30 days to file an amended complaint. Mr. Sparks's Motion to File Supplemental Appendix is DENIED. Mr. Sparks's Motion to Proceed on Appeal Without Prepayment of Costs or Fees is GRANTED, and he is reminded that he is obligated to continue making partial payments toward the balance of his assessed fees and costs until they are paid in full.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge