In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1435

RICK L. KNIGHT,

*Plaintiff-Appellant,*

*v.*

OFFICER KENNETH WISEMAN and
OFFICER MARK WIEDAU,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 07-CV-127—**David R. Herndon**, *Chief Judge.*

ARGUED OCTOBER 29, 2009—DECIDED DECEMBER 22, 2009

Before FLAUM, MANION, and WOOD, *Circuit Judges.*

FLAUM, *Circuit Judge.* Rick Knight, plaintiff-appellant, appeals a grant of summary judgment in favor of defendants-appellees Kenneth Wiseman and Mark Wiedau. Knight is a prisoner at Vandalia Correctional Center in Vandalia, Illinois, where Wiseman and Wiedau worked as correctional officers. In a 42 U.S.C. § 1983 claim, Knight alleged that the appellees violated his Eighth and Fourteenth Amendment rights by requiring him to

work despite a prior shoulder injury and delaying medical treatment following Knight's subsequent re-injury. The district court granted summary judgment in favor of the officers, finding that the evidence in the record did not create an issue of material fact regarding whether the defendants acted with deliberate indifference to plaintiff's medical needs and that the defendants were protected by qualified immunity.

For the following reasons, we now affirm.

## I. Background

This case revolves around a repeat shoulder injury Rick Knight sustained on February 16, 2005, while serving a four-year sentence in the Illinois Department of Corrections ("IDOC").

In July 2004, Knight had arthroscopic surgery to repair a torn rotator cuff in his right shoulder. On December 8, 2004, Knight began serving his sentence at the Graham Correctional Center. On January 27, 2005, IDOC transferred Knight to the Vandalia Correctional Center ("Vandalia"). After several weeks in a segregation dormitory at Vandalia, Knight was assigned to a work camp adjacent to the prison. Inmates at the work camp live in a different section of the facility and leave daily for supervised work detail.

Vandalia Assignment Officers determine the eligibility of inmates for work camp duty on the basis of several factors, paying particular attention to an inmate's medical condition. To that end, individuals who bear a

work restriction issued by a licensed medical professional cannot transfer to the camp. Eligible inmates at the camp participate in a work gang where at least one correctional officer supervises every eight inmates at all times. These work gangs usually cut down tree branches and pick up stray logs alongside highways.

Prior to his February 16, 2005, injury, Knight did not have any medical work restrictions. Upon his initial arrival at Vandalia, he told the medical staff about his shoulder surgery, explaining that his shoulder "popped the other night and now hurts." The prison's medical records appropriately reference the complaint. Knight also stated that while he could use his right arm, he had difficulty pulling himself up to the top bunk. Accordingly, he requested and received a bottom-bunk permit with an eighteen-month duration from Dr. Vipin K. Shah, the Facility Medical Director. Knight did not request or receive a light-duty restriction, a gym restriction, or a yard restriction while at Vandalia.

When Knight arrived at the work camp, he immediately told the officer making the transfer that he could not do extremely heavy work. The officer, who is not a defendant in this case, told Knight that he was going to the work camp anyway. At the camp, Knight successfully procured a transfer from a top bunk to a bottom bunk after showing his segregation bunk pass and explaining why he had it. Appellant performed work on several dates prior to February 16, 2005, all of which involved "general maintenance and clean-up," the description provided for the February 16th detail. On the morning of

his very first assignment, Knight informed the officer at the front desk that he had a shoulder injury and was not supposed to do heavy lifting or throwing. The officer replied, "[E]ither you go to work or you go to [segregation]," and Knight went to work. Officers Wiseman and Wiedau were present but not within hearing range for this conversation. Knight also testified that at some unspecified point in time either Wiseman or Wiedau made the same comment to him.

In his deposition, Knight testified that on the first three work details he would always try to pick lighter work and use his left arm for heavy lifting. He did not incur any injuries or experience any soreness in his shoulder during these assignments. Indeed, prior to February 16, 2005, Knight filed no grievance stating that work detail put him at risk of re-injury, made no request for laundry duty, and sought no medical attention for his shoulder. Knight testified that he "enjoyed" being on work detail "because [he] got to leave the prison."

On the morning of February 16, 2005, Wiseman and Wiedau took a group of inmates to do roadside maintenance. They arrived at the site shortly after 8 a.m. Once the gang began working, Wiseman realized that one of the chainsaws was broken, returned to the van, and radioed another officer to request a replacement. He then attempted to fix the broken tool himself. Meanwhile, Knight began the detail by doing light work. Defendants-appellees demanded he do more and, after some verbal prodding, Knight threw a log and felt his shoulder "rip." Knight immediately grabbed his arm and went to tell

Wiseman and Wiedau what had happened. Neither officer saw the event, which Knight testified took place at approximately 9 a.m. (Wiseman put the time at 8:15 a.m. in his testimony). After Knight complained about being in pain, Wiedau instructed him to go back to the ditch and do whatever work he could with one arm. Knight attempted to pick up branches and twigs but could not do so because of the pain. He again complained to Officer Wiedau. Together, the two approached Officer Wiseman, who explained that he could not drive Knight to the Health Care Unit ("HCU"), but that Knight could ride back with the officer delivering the replacement chainsaw.

Notably, at some point during the morning, Knight stated that he should not have been at the work camp at all because of his shoulder injury, to which Officer Wiseman responded that if Knight said as much at the beginning of the day, he would have been left behind at the work camp. Knight argues that this exchange took place as soon as the gang arrived at the work site, but the record belies his assertion. In his own testimony, appellant never contends that he specifically informed Wiseman and Wiedau about his shoulder problems before the re-injury. Furthermore, Officer Wiseman testified, "[Knight] told me that he had previously hurt his shoulder and that he shouldn't even be at the work camp. I said that's fine with me. If he would have said that before we left, I wouldn't have even took him out." Wiseman added that immediately after this conversation he told Knight, "[W]e've got a guy on the way out with a saw, you can go back with him," which would mean that

Knight made his comment while complaining to the officers after re-injury.

Eventually, the officer carrying the replacement chain-saw arrived, picked up Knight, and drove back to Vandalia. Before taking the plaintiff-appellant to the Health Care Unit, the officer dropped off two items at a parking lot about a mile beyond the work camp. A nurse saw Knight at 10:45 a.m. and gave him ibuprofen. Dr. Shah examined Knight the next day, again prescribed ibuprofen, ordered an X-ray, and assigned plaintiff-appellant a week-long "lay in." While Dr. Shah initially diagnosed Knight's injury as a shoulder sprain, a CT scan performed in April 2005 revealed a torn rotator cuff, for which plaintiff received physical therapy.

The district court granted summary judgment in favor of Officers Wiedau and Wiseman. It found that the evidence created a question of fact as to whether Knight's condition was "serious" for Eighth Amendment purposes but did not create a material question of fact as to whether either officer acted with deliberate indifference. The court held that the record contains no evidence that Wiedau and Wiseman knew of Knight's shoulder injury before they made him begin work on February 16, 2005, or that Wiedau and Wiseman actually forced Knight to continue working after his injury, thereby exacerbating it. Finally, Judge Herndon determined that Knight did not present any evidence that the delay in transportation worsened his medical condition. The court also concluded that since defendants-appellees acted consistently with the appellant's constitutional rights, qualified

immunity shielded them from liability and provided a parallel ground for summary judgment. Knight does not challenge this finding and we do not reach it because the merits of the deliberate indifference claim are dispositive of the case before us.

## II. Discussion

We review a district court's grant of summary judgment de novo. *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008). Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In resolving a summary judgment motion, we draw all reasonable inferences and resolve factual disputes in favor of the non-moving party. *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000).

Pursuant to 42 U.S.C. § 1983, Knight claims that defendants-appellees violated his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment by acting with deliberate indifference to his serious medical needs. Section 1983 creates a cause of action against "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Since a § 1983 cause of action is against a "person," in order "[t]o recover damages under § 1983, a plaintiff must

establish that a defendant was personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*

The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Id.* A "display [of] deliberate indifference to serious medical needs of prisoners" constitutes a breach of this duty. *Johnson*, 444 F.3d at 584. Thus, a claim that a prison official has violated the Eighth Amendment must demonstrate two elements: (1) an objectively serious medical condition, and (2) deliberate indifference by the prison officials to that condition. *Id.* (citing *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000)). To be "serious," a medical condition must be one that a physician has diagnosed as needing treatment or "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Johnson*, 444 F.3d at 584-85. To show deliberate indifference, the plaintiff must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it. Deliberate indifference requires a showing of more than mere or gross negligence, but less than purposeful infliction of harm. *Matos v. O'Sullivan*, 335

F.3d 553, 557 (7th Cir. 2003); *Proffitt v. Ridgway*, 279 F.3d 503, 506 (7th Cir. 2002) (explaining that deliberate indifference to a prisoner's safety implies avoidance of known risk, not merely foreseeable risk).

The district court found that Knight may have actually had a serious medical condition with his shoulder. Appellant does not challenge that determination and we do not review it. The only issue before us is whether a genuine question of material fact exists about the possibility of deliberately indifferent conduct by the defendants-appellees. Knight asserts that Wiseman and Wiedau acted with deliberate indifference at three different points in time: (1) when they initially made Knight work despite knowing that his history of shoulder problems made it unsafe for him to do so; (2) when they made Knight return to work after he re-injured his shoulder; and (3) when they delayed Knight's medical treatment following his February 16th re-injury. We address each of these contentions in turn.

Knight's first argument is that the defendants displayed deliberate indifference to his serious medical condition because they knew of his prior shoulder issues before he began working on February 16, 2005, but made him work anyway. The evidence in the record points to the contrary conclusion. Wiseman and Wiedau both signed affidavits stating that they did not know of any physical disability stemming from or pre-existing injuries associated with Knight's shoulder before the gang arrived at the work site. They also swore that they did not instruct Knight to continue working after learning about his February 16th shoulder injury.

Knight fails to present any piece of evidence that contradicts these statements. To survive summary judgment, a non-moving party must "show through specific evidence that a triable issue of fact remains on issues for which the nonmovant bears the burden of proof at trial." *Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994), *aff'd sub nom*. *Walker v. Ghoudy*, 51 F.3d 276 (7th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). "Furthermore, the evidence submitted in support of the nonmovant's position must be sufficiently strong that a jury could reasonably find for the nonmovant." *Walker*, 28 F.3d at 671. Under this standard, the district court correctly concluded that, in the absence of evidence showing that Wiseman and Wiedau actually knew of Knight's shoulder injury before Knight reinjured it on February 16, it could not reasonably infer that the defendants exhibited deliberate indifference to any serious medical condition of the plaintiff when they made him work upon arrival to the site.

Knight makes several arguments attacking this result. He begins by pointing to statements in his own deposition that defendants-appellees "knew [his] situation." Yet Knight never specified how the defendants could have learned about his "situation." Moreover, he does not explain what facts constituting the "situation" the defendants actually knew. These could have amounted to nothing more than an awareness by the officers that Knight had a tendency to complain about his health or the slightly more weighty belief that Knight had previously undergone some shoulder surgery. Under the

prevailing standard for deliberate indifference claims, neither of these states of mind could form the basis for a constitutional violation. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding that deliberate indifference occurs when an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of *facts* from which the inference could be drawn that a *substantial risk of serious harm exists*, and he must also draw the inference.") (emphasis added). Knight simply does not provide facts that would enable a reasonable jury to reach a conclusion favorable to him.

Knight attempts to further substantiate his first deliberate indifference claim by pointing to the conversation between himself and the officer at the front desk, during which Knight said that he had a shoulder injury and should not be doing heavy lifting or throwing. While such an announcement could conceivably serve as the basis for the subjective awareness element required by *Farmer*, Knight specifically admitted that neither Wiseman nor Wiedau were within hearing distance of that conversation. Additionally, Wiseman testified that at no point prior to February 16 did he warn Knight that he either had to come out for work detail or leave the camp altogether. In his deposition, Wiedau similarly denied having heard Knight's complaints before February 16, 2005. We note here that Wiedau's deposition was not part of the trial record and would not constitute evidence that can defeat a motion for summary judgment on appellate review even if it contained a contrary assertion. *United States v. Phillips*, 914 F.2d 835, 840 (7th Cir.

1990); *see also Brokaw v. Weaver*, 305 F.3d 660, 668 n.7 (7th Cir. 2002); *United States v. Elizalde-Adame*, 262 F.3d 637, 640 (7th Cir. 2001). Therefore, properly introduced evidence in its entirety cannot support appellant's contention that Wiseman and Wiedau knew of his injury before he began work on the morning of February 16, 2005.

Unrelenting in his effort to prove otherwise, Knight again highlights the deposition testimony of Wiseman and Wiedau. Yet the relevant excerpts from Wiseman's testimony still fail to support Knight's allegations of deliberate indifference. As mentioned above, Wiseman stated: "[Knight] told me that he had previously hurt his shoulder and that he shouldn't even be at the work camp. I said that's fine with me. If he would have said that before we left, I wouldn't have even took him out." Subsequent parts of Wiseman's testimony show that the exchange took place after Wiseman permitted Knight to sit in the van and wait for an officer to take him back to camp. That is, the record indicates that Wiseman said the line on which Knight hinges much of his case only after plaintiff-appellant re-injured himself. Thus, the district court did not err when it determined that a reasonable jury could not reach the conclusion that the defendants knew about Knight's shoulder injury.

Additionally, the district court correctly found that even if the defendants knew of Knight's previous shoulder injury, such knowledge would not have raised a question of material fact as to whether they acted with deliberate indifference. Knight did not have any medical work restrictions on his record. Officers Wiedau and

Wiseman were entitled to rely on this fact and conclude that appellant could work without endangering his health. *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (reiterating "the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care").

In every one of the cases Knight cites to support his appeal, a court permitted an Eighth Amendment claim to go forward based on compulsory work only for prisoners who had an active work restriction issued by a medical professional. *See, e.g.*, *Williams v. Norris*, 148 F.3d 983, 987 (8th Cir. 1998) (affirming summary judgment for the plaintiff in a § 1983 action where plaintiff presented evidence that he had "medical restrictions on his duties, . . . [that the defendants] knew of the restrictions, . . . [that plaintiff's] work assignment was contrary to the restrictions, and that neither official took action to rescue [plaintiff] from work that was dangerous to his health and that in fact resulted in damage to him"); *Grady v. Edmonds*, 2007 WL 2986167, at *7-8 (D. Colo. June 11, 2007) (stating a magistrate judge's recommendation that a possible Eighth Amendment violation existed where the defendant corrections officer said "[Your] restrictions are changed. You'll work your job or go to segregation" and told the doctor in the facility to lift the plaintiff's existing work restrictions). The district court reasoned that imposing liability on a non-medical corrections officer for making an inmate without work restrictions participate in work detail would "effectively cause correctional officers to respond to the whim of the inmates

each time one thought of some reason he should not have to perform a given work assignment." While the logic of this concern is compelling, we need not draw such a hard line. Instead, we conclude that the record presented in this case shows that defendants-appellees were entitled to rely and did rely on the Vandalia Assignment Officer's professional determination that Knight did not face any medical obstacles to performing work camp duties. *See Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."). Accordingly, they did not act with deliberate indifference of any serious medical condition when they made plaintiff-appellant do his work.

Knight demarcates a second potential anchor point for his claim by arguing that Wiseman and Wiedau acted with deliberate indifference when they forced him to return to work after he re-injured his shoulder. Even viewing the facts in a light most favorable to Knight does not permit us to accept the assertion that defendants-appellees forced him to continue working once it was clear that he was in serious pain. Taking Knight's testimony as true, he informed Wiedau of his injury, and Wiedau told him to work with one hand. Knight then picked up a few branches, complained about the pain again, and did not go back to work. In Knight's words, he "went down in the area where the other guys were at working [sic] and just stood there." This course of events does not amount to deliberate indifference. The officers

appropriately heeded all signs of appellant's medical condition. Their skepticism of complaints about shoulder pain by a petulant prisoner at a work camp does not constitute a violation of the Eighth Amendment. *See Riccardo v. Rausch*, 375 F.3d 521 (7th Cir. 2004) ("The Constitution does not oblige guards to believe whatever inmates say."). The record demonstrates without any material ambiguity that as soon as Knight informed the officers that he was so hurt that he could not do any work at all, Wiseman and Wiedau took the necessary steps to secure him the medical treatment to which he was entitled, which a doctor in this case determined to be ibuprofen and bed rest. Moreover, we see no evidence that Knight's brief attempt to pick up twigs with his left hand aggravated his injury to his right shoulder or caused him significant additional pain. Accordingly, appellant's attempt to recover damages under § 1983 on the grounds that the correctional officers forced him to *return* to work would be undermined even if he had successfully demonstrated their deliberate indifference to his medical condition.

Lastly, Knight contends that the period of time between when he re-injured his shoulder and when he received medical treatment amounts to a delay that is independently sufficient to trigger an Eighth Amendment violation. "A delay in the provision of medical treatment for painful conditions—even non-life-threatening conditions—can support a deliberate indifference claim so long as the medical condition is 'sufficiently serious or painful.'" *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (internal citations omitted). However, the action

will not lie unless the plaintiff introduces verifying med-
ical evidence that shows his condition worsened because
of the delay. *Id.*; *see, e.g.*, *Williams v. Liefer*, 491 F.3d
710, 715 (7th Cir. 2007) (stating that plaintiff must "offer
'verifying medical evidence' that the delay (rather than
the inmate's underlying condition) caused some degree
of harm"); *see also Petty v. County of Franklin, Ohio*, 478
F.3d 341, 344 (6th Cir. 2007); *Laughlin v. Schriro*, 430 F.3d
927, 929 (8th Cir. 2005). Knight submitted no such evi-
dence. Furthermore, viewing the record in the light
most favorable to the non-moving party, at most two
and a half hours passed between the injury, which
could have taken place as early as 8:15 a.m., and the
treatment, which uncontested medical records place at
10:45 a.m. An unincarcerated individual may well
consider oneself fortunate if he receives medical atten-
tion at a standard emergency room within that short of
a period of time.

The cases Knight cites to support his claim of uncon-
stitutional delay are factually inapposite. For example,
appellant invokes *Sparks v. Rittenhouse*, 164 Fed. Appx. 712,
717-18 (10th Cir. 2006) (unpublished), where a prisoner
filed a § 1983 complaint after spending twenty-one
months without treatment for a shoulder injury, during
which time the defendant medical professional
allegedly denied care because of her personal views. Any
delay in treatment Knight experienced was minimal and
had no adverse consequences. Furthermore, there is no
evidence that the delay here was caused by willful igno-
rance or malice on behalf of either Wiseman or Wiedau,
starkly contrasting the case with the situations in *Gil v.*

*Reed*, 535 F.3d 551 (7th Cir. 2008) (upholding Eighth Amendment claim where physician assistant refused to fill inmate's antibiotics prescription despite holding the necessary pills in his hand), and *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007) (finding potential liability for an officer who forced an obese plaintiff to carry a 200-pound box up several flights of stairs despite the plaintiff's persistent complaints about chest pain and a known history of chronic hypertension). The officers could not abandon the remainder of the work gang and the severity of the injury did not appear to call for the cancellation of the detail altogether, so they placed Knight on the next available transport back to Vandalia. Our precedent does not fault this conduct.

The independent decision of the van's driver to take a brief, mile-long detour caused no detriment to Knight's condition and has little bearing on the extent to which Wiseman's or Wiedau's own actions amounted to deliberate indifference. As we have previously remarked, "it is difficult to generalize about the civilized minimum of public concern necessary for the health of prisoners except to observe that this civilized minimum is a function both of objective need and cost." *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004); *see also Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999). The Eighth Amendment does not require prison officials to provide flawless treatment, *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004), and Knight has done little more than demonstrate possible shortcomings in the behavior of defendants-appellees when compared against an absolute standard of perfect medical care. The evidence

before us shows without any issue of material fact that the officers responded to Knight's injury as prudently as they could while maintaining proper safety procedures at the work site.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of defendants-appellees Wiseman and Wiedau.