NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 5, 2015[*]
Decided March 12, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-1607

| | |
|---|---|
| JOSEPH DAVIS, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 3:10-CV-00971-JPG-PMF |
| | |
| JILL WAHL, | J. Phil Gilbert, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Joseph Davis, an Illinois inmate, appeals from the grant of summary judgment against him in this suit under 42 U.S.C. § 1983 for deliberate indifference to his medical needs. He contends that Dr. Jill Wahl, a physician at Pinckneyville Correctional Center, refused to treat properly his rectal prolapse, a condition where the rectum falls through the anal opening. *See Rectal Prolapse*, NAT'L INST. OF HEALTH, http://www.nlm.nih.gov/medlineplus/ency/article/001132.htm (last updated Mar. 2, 2015). We affirm the

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

judgment because Davis furnished no evidence suggesting that Dr. Wahl provided treatment that was so inadequate that it violated his constitutional rights.

Beginning in April 2010, Davis complained to Dr. Wahl of pain and rectal bleeding. When the doctor first examined him, she noted that he might have a rectal prolapse. She prescribed suppositories, blood work, and stool tests. After Davis tested positive for a bacterial infection and complained of more abdominal discomfort and bleeding, Dr. Wahl prescribed antibiotics for the infection and medication to relieve his abdominal pain. When examining him in July, Dr. Wahl found no blood in his stool. Davis still reported abdominal pain, so she ordered more stool tests. Four months after Dr. Wahl first saw Davis, he tested negative for the bacterial infection that Dr. Wahl had treated. Davis continued to report abdominal discomfort, and he told a nurse that Dr. Wahl had recommended a colonoscopy.

During the next four months, other doctors treated Davis's condition. During that time his rectal bleeding returned, as did his bacterial infection. These doctors categorized Davis's bleeding, not as a rectal prolapse, but as a hemorrhoid issue. The two conditions are often difficult to distinguish. *See* Jeffrey J. Morken, *Rectal Prolapse*, AM. SOC'Y OF COLON AND RECTAL SURGEONS, http://www.fascrs.org/patients/ disease-condition/rectal-prolapse (last visited Feb. 27, 2015). These doctors prescribed medications and tests similar to those ordered by Dr. Wahl, but they also began to treat Davis with sitz baths. A sitz bath is a warm water bath often used to relieve pain and speed healing after hemorrhoid surgery. *See Sitz Baths*, NAT'L INST. OF HEALTH, http://www.nlm.nih.gov/medlineplus/ency/article/ 002299.htm (last updated Mar. 2, 2015).

Dr. Wahl saw Davis again in January 2011, about nine months after her first examination of him. Davis told her that the sitz baths were helping relieve his symptoms. Based on her knowledge, reflected in an uncontradicted affidavit, that he could regularly get the equivalent of a sitz bath in his cell by sitting on a warm towel, she cancelled the baths for him in the health-care unit and prescribed the warm-towel treatment. But Davis found that he could not perform the towel treatment in his cell because the cell was unsanitary and he could not get hot water there. After he filed a grievance in which he explained these problems, Dr. Wahl reauthorized the sitz baths in the health-care unit.

More than a year after Dr. Wahl first examined Davis, he saw two specialists in 2011 for his rectal condition. Dr. Stephen Schmidt, a gastroenterology specialist, examined Davis in June 2011. The specialist found nothing remarkable but, like

Dr. Wahl, suggested further stool studies, blood work, and a possible colonoscopy. About a half year later, Dr. Matthew Mutch, a colorectal surgeon, also examined Davis. The surgeon confirmed, as Dr. Wahl had initially suspected, that Davis had a rectal prolapse, and he recommended surgery. But Davis has refused to consent to the procedure.

Davis sued Dr. Wahl, contending that her treatment of his rectal condition, including prescribing a warm towel in lieu of a sitz bath and the year-long delay before he was referred to a specialist, violated the Eighth Amendment. After the district court dismissed some claims not at issue on appeal, it granted summary judgment to Dr. Wahl for three reasons. First, no evidence suggested that Dr. Wahl did not exercise professional judgment in prescribing treatment and tests, and Davis conceded that her treatments helped him. Second, Dr. Wahl was not deliberately indifferent to his need for a sitz bath because she reinstated his bath treatment when she learned that Davis's cell was ill-equipped to provide the warm-towel equivalent. Finally, the court concluded, nothing in the record suggested that Dr. Wahl improperly delayed Davis's access to a specialist and when Davis saw the first specialist, the gastroenterologist recommended the same course of treatment as Dr. Wahl had suggested.

On appeal, Davis disputes the district court's conclusion that Dr. Wahl did not violate the Eighth Amendment. To avoid summary judgment on a claim of constitutionally deficient medical care, Davis must supply evidence that Dr. Wahl both knew of and disregarded an excessive risk to his health. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). He has not met his burden.

Davis first argues that Dr. Wahl's treatment of his rectal condition, including the temporary discontinuation of the sitz baths, violated the Eighth Amendment. He asserts that she knew that the baths provided him relief and that the towel procedure would less effectively treat his symptoms. But Davis has supplied no evidence of the second point. He does not contradict Dr. Wahl's affidavit that the benefits of a sitz bath can be achieved with a warm towel. Nor does he furnish evidence that she knew that his cell was unsanitary or lacked hot water. *See* FED. R. CIV. P. 56(c), (e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Knight v. Wiseman*, 590 F.3d 458, 463–64 (7th Cir. 2009). And when Dr. Wahl became aware, through Davis's prison grievance, that Davis could not perform the warm-towel treatment in his cell, she reinstated the sitz baths for him in the health-care unit. Finally Davis has provided no evidence that, in the remainder of her treatment, Dr. Wahl failed to exercise her medical judgment; the fact that other doctors continued her treatment plan—and Davis does not challenge their judgment—is

evidence to the contrary. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074–75 (7th Cir. 2012); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

Davis next argues Dr. Wahl violated the Eighth Amendment by not referring him to a specialist immediately when she first suspected a possible rectal prolapse in April 2010. Doctors may exercise their medical judgment when deciding whether to refer a prisoner for specialist care; a decision not to refer will constitute deliberate indifference only when the decision is "blatantly inappropriate." *See Pyles v. Fahim*, 771 F.3d 403, 411–12 (7th Cir. 2014) (internal citations and quotation marks omitted); *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008). This deferential standard is violated when needless suffering results from the delay. *See Knight*, 590 F.3d at 466; *Williams v. Liefer*, 491 F.3d 710, 714–16 (7th Cir. 2007); *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004); *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002). But nothing in the record suggests that Davis suffered needlessly. First, Davis has admitted that, even without the referral, his symptoms improved with Dr. Wahl's treatment. Second, the first specialist that Davis saw recommended treatment similar to what Dr. Wahl had been prescribing. Finally, even after he saw a second specialist, who advised surgery, Davis has *refused* to consent to that procedure; his refusal undercuts his unsubstantiated assertion of harm. *See Pinkston v. Madry*, 440 F.3d 879, 892 (7th Cir. 2006); *Walker v. Peter*, 233 F.3d 494, 500 (7th Cir. 2000).

Davis raises other arguments on appeal, which we have considered, but because he fails to develop them, we need not say more about them. *See* FED. R. APP. P. 28(a)(8)(A); *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014); *Anderson v. Hardman*, 241 F.3d 544, 545–46 (7th Cir. 2001).

AFFIRMED.